WILLIAM T. McCLURG, JOHN C. PARRY, AND ENOCH J. HIGBY, PARTNERS, DOING BUSINESS UNDER THE FIRM OF McCLURG, PARRY, AND HIGBY, ASSIGNEES OF JAMES HARLEY, PLAINTIFFS IN ERROR, *v.* LAWRENCE KINGSLAND, ISAAC LIGHTNER. AND JAMES CUDDY, PARTNERS, DOING BUSINESS UNDER THE FIRM OF KINGSLAND, LIGHTNER, AND CUDDY, DEFENDANTS.

If a person employed in the manufactory of another, while receiving wages, makes experiments at the expense and in the manufactory of his employer; has his wages increased in consequence of the useful result of the experiments; makes the article invented and permits his employer to use it, no compensation for its use being paid or demanded; and then obtains a patent, these facts will justify the presumption of a license to use the invention.

Such an unmolested and notorious use of the invention prior to the application for a patent, will bring the case within the provisions of the 7th section of the act of 1839, c. 88.

The assignees of a patent-right take it subject to the legal consequences of the previous acts of the patentee.

The 14th and 15th sections of the act of 1836, c. 357, prescribe the rules which must govern on the trial of actions for the violation of patent-rights; and these sections are operative, so far as they are applicable, notwithstanding the patent may have been granted before the passage of the act of 1836

The words, "any newly invented machine, manufacture, or composition of matter," in the 7th section of the act of 1839, have the same meaning as "invention," or "thing patented."

THIS case was brought up by writ of error from the Circuit Court of the United States for the western district of Pennsylvania.

The facts are sufficiently stated in the opinion of the court.

The bill of exceptions which was taken on the trial below was as follows: .

And the plaintiff thereupon excepted to certain parts of the instructions so given by the court to the jury, which instructions so excepted to are hereinafter set forth, to wit:

" It has, however, been urged by the plaintiff's counsel that the right to the continued use is restricted to the 'specific machine, manufacture, or composition of matter so made or purchased,' so that a defendant is protected no farther than in the case of the invention (for which this patent was granted) prior to the application, and is liable to damages if he makes any rolls by Harley's plan afterwards.

McClurg et al. v. Kingsland et al.

" We, therefore, feel bound to take the words, ' newly invented machine,' in the act of 1839, manufacture, or composition of matter and such invention, to mean the invention patented, and the words 'specific machine,' to refer to the thing originally invented, whereof the exclusive right is procured by patent, but not to any newly discovered improvement to an existing patent.

" The use of the patent must be of the same specific improvement originally invented, as was before the application used by any person who had purchased or constructed the machinery on which he operated to produce the effect described in the specification; but when such person confines the future case to the specific mode, method, manner, and process of producing the described effect, it is by the words and true meaning of the law, without liability to the inventor or other person interested in the invention, so construed; and by thus protecting the person who has engaged the use of an invention before the application for a patent, the great object of the patent laws, as declared in the 4th section of the act of 1837, will be consummated; that is, to protect the rights of the public and ' of patentees in patented inventions and improvements.' 4 Story, 2547. A different construction would make it necessary to carry into all the former laws the same literal exposition of the various terms used to express the same thing, and thereby changing the law according to every change of phraseology, make it a labyrinth of inextricable confusion.

" Our opinion, therefore, is, that the defendants have a right to the continued use of the improvement patented to Harley; the facts of the case, which are not controverted, have equal effect with a license, and the evidence brings the defendant under the protection of the act of 1839, by the unmolested notorious use of the invention before the application for a patent. Nothing has been shown on the part of the plaintiffs to counteract the effect of this prior use; as assignees of Harley, they stand in his place as to right and responsibility; they took the patent, subject to the legal consequences of his previous acts, and connecting these with the want of an assertion of a right, to the use by the defendants of the invention patented, till this suit was brought in September, 1835, protects them from liability.

McClurg et al. *v.* Kingsland et al.

"In our opinion, your verdict ought to be for the defendants. Verdict accordingly, and judgment for defendants."

*Dunlap,* on behalf of the plaintiffs in error, contended that the court below had erred in charging the jury.

1. That the facts justified the presumption of a license or grant to use the invention, and that defendants were protected thereby, independent of any act of Congress.

2. That the words, "specific machine," in the 4th section of the act of 1839, referred to the invention itself, and that the authority to use it before the patent carried the right to continue to make and use it after the patent had issued.

Mr. Justice BALDWIN delivered the opinion of the court.

This case comes here on a writ of error to the Circuit Court for the western district of Pennsylvania, in an action brought by the plaintiffs, assignees of James Harley, against the defendants, for the infringement of a patent granted to Harley for an improvement in the mode of casting chilled rollers and other metallic cylinders and cones, in which judgment was rendered for the defendants. On the trial it appeared in evidence that it had long been a desideratum to find out some mode by which iron rollers or cylinders could be so cast that when the metal was introduced into the mould it should cause a swyrl or rotatory motion, by which the flog or dross would be thrown into the centre instead of the surface of the cylinder. By the old mode, the metal was conveyed from the furnace to the mould through a gate, or pipe, placed in a horizontal or perpendicular direction. The mode alleged to have been invented by Harley is thus described in the specification annexed to the patent: "The tube or tubes, or passages called gates, through which the metal to be conveyed into the moulds shall not enter the mould perpendicularly at the bottom, but slanting, or in a direction approaching to a tangent of the cylinder, or if the gates enter the moulds horizontally or nearly so, shall not enter in the direction of the axis of the cylinder, but in a tangent form, or inclining towards a tangent of the cylinder."

This was the thing patented, consisting solely in changing the direction of the tube, which conveyed the metal to the mould,

from a horizontal or perpendicular position to an angular one; it produced the desired effect and was highly useful.

The novelty of the invention was much contested at the trial, but as the case turned on other points, that became an immaterial question; as the case comes before us, on exceptions to the charge of the court, which assumed that Harley was the original and true inventor of the improvement, and put the case to the jury on the following facts, which were in full proof, in nowise contradicted, and admitted to be true.

That Harley was employed by the defendants at their foundry in Pittsburgh, receiving wages from them by the week; while so employed, he claimed to have invented the improvement patented, and after several unsuccessful experiments made a successful one in October, 1834; the experiments were made in the defendants' foundry, and wholly at their expense, while Harley was receiving his wages, which were increased on account of the useful result. Harley continued in their employment on wages until January or February, 1835, during all which time he made rollers for them; he often spoke about procuring a patent, and prepared more than one set of papers for the purpose; made his application the 17th February, 1835, for a patent; it was granted on the 3d of March, assigned to the plaintiffs on the 16th of March, pursuant to an agreement made in January.

While Harley continued in the defendants' employment, he proposed that they should take out a patent and purchase his right, which they declined; he made no demand on them for any compensation for using his improvement; nor gave them any notice not to use it, till, on some misunderstanding on another subject, he gave them such notice, about the time of his leaving their foundry, and after making the agreement with the plaintiffs, who owned a foundry in Pittsburgh, for an assignment to them of his right. The defendants continuing to make rollers on Harley's plan, the present action was brought in October, 1835, without any previous notice by them. The court left it to the jury to decide what the facts of the case were; but if they were as testified, charged that they would fully justify the presumption of a license, a special privilege, or grant to the defendants to use the invention; that the facts amounted to "a consent and allowance of such use," and show such a consideration as would support

S

an express license or grant, or call for the presumption of one to meet the justice of the case, by exempting them from liability; having equal effect with a license, and giving the defendants a right to the continued use of the invention. The court also charged the jury, that the facts of the case, which were not controverted, brought it within the provisions of the 7th section of the act of 1839, by the unmolested, notorious use of the invention, before the application for a patent by Harley, and that nothing had been shown by the plaintiffs to counteract the effect of this prior use. That as assignees of Harley, the plaintiffs stand in his place, as to right and responsibility; they took the assignment of the patent, subject to the legal consequences of his previous acts, and connecting these with the absence of an assertion of a right adverse to the defendants use till this suit was brought, protected the defendants from liability for any damages therefor.

The exceptions to the charge were confined to these two points, which constitute the only subject for our consideration. Whether these exceptions are well taken or not, must depend on the law as it stood at the emanation of the patent, together with such changes as have been since made; for though they may be retrospective in their operation, that is not a sound objection to their validity; the powers of Congress to legislate upon the subject of patents is plenary by the terms of the Constitution, and as there are no restraints on its exercise, there can be no limitation of their right to modify them at their pleasure, so that they do not take away the rights of property in existing patents.

When the patent to Harley was granted, and this suit brought, the acts of 1793 and 1800 were the tests of its validity, but the 21st section of the act of 1836 repealed all existing laws on the subject of patents, with a proviso, that all suits brought before may be prosecuted in the same manner as if that act had not been passed, "excepting and saving the application to any such action, of the provision of the 14th and 15th sections of this act, so far as they may be applicable thereto." This repeal, however, can have no effect to impair the right of property then existing in a patentee, or his assignee, according to the well-established principles of this court in 8 Wheat. 493; the patent must therefore stand as if the acts of 1793 and 1800 remained in force; in other respects the 14th and 15th sections of the act of

1836 prescribe the rules which must govern on the trial of actions for the violation of patented rights, whether granted before or after its passage.

In Pennock v. Dialogue, this court held, in 1829, "That if an inventor makes his discovery public, looks on, and permits others freely to use it, without objection or assertion of claim to the invention, of which the public might take notice; he abandons the inchoate right to the exclusive use of the invention, to which a patent would have entitled him, had it been applied for, before such use, and that it makes no difference in the principle, that the article so publicly used, and afterwards patented, was made by a particular individual who did so by the private permission of the inventor." 2 Peters, 14, 15; S. P. Grant v. Raymond, 6 Peters, 248, 249; Shaw v. Cooper, 7 Peters, 313—323.

On this construction of the acts of 1793 and 1800, Harley's patent would have been void, on the evidence in this case. Such seems to have been the sense of Congress, as expressed in the act of 1832, which authorized the issuing a new patent, when an original one was invalid by accident, inadvertence, or mistake, and without any fraudulent intent, by reason of the terms of the 3d section of the act of 1793 not having been complied with, "Provided, however, that such new patent so granted shall in all respects be liable to the same matters of objection and defence as any original patent, granted under the said first-mentioned act. That no public use or privilege of the invention so patented, derived from or after the grant of the original patent, either under any special license of the inventor, or without the consent of the patentee that there shall be free public use thereof, shall in any manner prejudice the right of recovery for any use or violation of his invention after the grant of such new patent, as aforesaid." 4 Story, 2301.

This act is an affirmance of the principles laid down by this court in the three cases before referred to, and as the exception to the proviso is limited to an use of the invention under a special license of the inventor after the grant of the original patent, it leaves the use prior to the application for such patent clearly obnoxious to the principle established in 2 Peters, 14, 15, whereby the patent would become void.

The same conclusion follows from the 15th section of the act

of 1836, which declares, that if the thing patented "had been in public use, or on sale, with the consent and allowance of the patentee, before the application for a patent," judgment shall be rendered for the defendant with costs.    4 Story, 2511.    The case before us is one of this description : the defendants use the invention of Harley for four months before his application for a patent ; this use was public, and not only with his express consent and allowance, but he himself made the rollers on the plan he invented during those months, from the time when he had ascertained the utility of his invention.

It would, therefore, be no strained, if not the fair construction of this act, if under such and the other circumstances in evidence in the cause, the court had charged the jury, that if they believed the witnesses, the patent subsequently obtained was void.    The Circuit Court, however, did not go so far : they held that the defendants might continue to use the invention, without saying that the public might use it, without liability to the plaintiffs, in which we think there was no error in their direction to the jury; that they might presume a license or grant from Harley, or on the legal effect of the uncontroverted evidence as to the right of recovery, by the plaintiffs, or on the construction of the acts of 1793, 1800, 1832, and 1836.

The remaining exception is to the charge of the court below, on the effect of the 7th section of the act of 1839, which is in these words : " That every person or corporation who has, or shall have purchased or constructed any newly-invented machine, manufacture, or composition of matter, prior to the application by the inventor or discoverer of a patent, shall be held to possess the right to use and vend to others to be used, the specific machine, manufacture, or composition of matter, so made or purchased, without liability therefore to the inventor, or any other person interested in such invention; and no patent shall be held invalid by reason of such purchase, sale, or use prior to the application for a patent as aforesaid, except on proof of abandonment of such invention to the public, or that such purchase, sale, or prior use has been for more than two years prior to such application for a patent."    Pamphlet Laws, 1839, 74, 75.

The object of this provision is evidently twofold; first, to protect the person who has used the thing patented, by having pur-

McClurg et al. *v.* Kingsland et al.

chased, constructed, or made the machine, &c., to which the invention is applied, from any liability to the patentee or his assignee. Second, to protect the rights, granted to the patentee, against any infringement by any other persons. This relieved him from the effects of former laws and their constructions by this court, unless in case of an abandonment of the invention, or a continued prior use for more than two years before the application for a patent, while it puts the person who has had such prior use on the same footing as if he had a special license from the inventor to use his invention; which, if given before the application for a patent, would justify the continued use after it issued without liability.

At the trial below, and here, the plaintiff's counsel have contended, that this act cannot apply to the present case, inasmuch as the protection it affords to the person who had the prior use, is confined to the specific machine, &c., and does not extend to such use of the invention, or thing patented, if it does not consist of a machine, &c., as contradistinguished from the new mode or manner in which an old machine or its parts operates, so as to produce the desired effect; but we think that the law does not admit of such construction, whether we look at its words or its manifest objects, when taken in connection with former laws, and the decisions of this court in analogous cases.

The words "such invention" must be referred back to the preceding part of the sentence, in order to ascertain the subject-matter to which it relates, which is none other than the newly-invented machine, manufacture, or composition of matter constituting the thing patented; otherwise these words become senseless when the invention is not strictly of a machine, &c. Now, in the present case, we find the invention consists solely in the angular direction given to the tube through which the metal is conducted into the cylinder in which the roller is cast. Every part of the machinery is old, the roller itself is no part of the invention, and cannot be the machine, manufacture, or composition of matter contemplated by Congress, nor can the word "specific" have any practical effect unless it is applied to the thing patented, whatever it may be, without making a distinction between a machine, &c., and the mode of producing a useful result by the mere direction given to one of the parts of an old machine. Such a construction

is not justified by the language of the law, and would defeat both of its objects. If it does not embrace the case before us, the consequence would be that the use of the invention, under the circumstances in evidence, would, according to the decision in 2 Peters, 14, 15, invalidate the patent; for if the act operates to save the avoidance of the patent, it must, of consequence, protect the person who uses the invention before the application for a patent. Both objects must be effected, or both must fail, as both parts of the act refer to the same thing, and the same state of things, as affecting the person using the newly-invented machine, or the thing patented, as well as the inventor. Had the words "invention," or "thing patented," been used instead of machine, &c., there could have been no room for doubt of the application of the act to the present case; and by referring to the phraseology of the different acts of Congress denoting the invention, it is apparent that, though there is a difference in the words used, there is none as to their meaning or reference to the same thing. Thus we find in the 14th section of the act of 1836, relating to suits for using "the thing whereof the exclusive right is secured by any patent," in the 15th, "his invention, his discovery, the thing patented," "that which was in fact invented or discovered," "the invention or discovery for which the patent issued," "that of which he was the first inventor." In the 1st section of the act of 1837, "any patent for any invention, discovery, or improvement," "inventions and discoveries;" in the 2d section, "the invention;" in the 3d, "invention or discovery;" in the 4th, "patented inventions and improvements;" in the 5th, "the thing as originally invented." 4 Story, 2510, 2511, 2546.

We, therefore, feel bound to take the words "newly-invented machine, manufacture, or composition of matter" and "such invention," in the act of 1839, to mean the "invention patented," and the words "specific machine," to refer to "the thing as originally invented," whereof the right is secured by patent; but not to any newly-invented improvement on a thing once patented. The use of the invention before an application for a patent must be the specific improvement then invented and used by the person who had purchased, constructed, or used the machine to which the invention is applied: so construed, the objects of the act of 1839 are accomplished; a different construction would

make it necessary to carry into all former laws the same literal exposition of the various terms used to express the same thing, and thereby changing the law according to every change of mere phraseology, make it a labyrinth of inextricable confusion.

We are, therefore, of opinion that there is no error in the charge of the court below, and that its judgment be affirmed.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the western district of Pennsylvania, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby affirmed, with costs.