BRICKILL and others *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK.

*(Circuit Court. S. D. New York.   July 2, 1880.)*

1. PATENT NO. 81,132—FEED WATER HEATERS FOR STEAM FIRE-ENGINES—INFRINGEMENT—VALIDITY.

Letters patent No. 81,132, granted to William A. Brickill, August 18, 1868, for improvement in feed water heaters for steam fire-engines, *held, valid,* and *infringed.*

2. SAME—SAME—INVENTION—UTILITY—PATENTABILITY.

Complainant's combination consisting of an apparatus for heating water, circulating through coils of pipe, to be connected, by two readily-detachable tubes, with the boiler of a steam fire-engine, and also with a tank, so that when the engine is not on duty the hot water will circulate through the boiler and keep the engine ready for immediate use, and through the tank, keeping the heating apparatus in order when the engine is away, *held,* to involve invention, and as it possessed utility was therefore patentable.

3. SECTION 7, PATENT ACT OF 1839, CONSTRUED—USE PRIOR TO APPLICATION FOR PATENT.

The clause of the act of 1839 which provides that every person and corporation may use, and vend to others to be used, any *specific machine, manufacture,* or *composition of matter* which they have purchased or constructed prior to the application for a patent, *held,* restricted in the case of patents for *substantive* things to the use of the particular thing bought or made, and not to a general use of the invention.

*Pierson* v. *Eagle Screw Co.* 3 Story, 402, 408.

*McClurg* v. *Kingsland,* 1 How. 202, distinguished.

4. ACT OF 1870—JURISDICTION.

The act of 1870 may govern rights under patents issued prior thereto, if the effect would not be to take away rights already secured under such patents.

5. INFRINGEMENT—AGENCY.

A city will be held responsible for infringements by its fire department, though separately incorporated.

6. SAME—EXTENT—INTERLOCUTORY DECREE

The extent of infringement shown is immaterial for the purpose of an interlocutory decree.

In Equity.

*James A. Hudson,* for complainants.

*Frederic H. Betts,* for defendants.

WHEELER, D. J.    This suit involves the construction and validity of letters patent No. 81,132, dated August 18, 1868, and granted to William A. Brickill for an improvement in feed water heaters for steam fire-engines. The novelty and patentability of the invention, and infringement of the patent by the defendant, are denied, and a license by operation of law to practice the invention is claimed.

The specification describes a heating apparatus for heating water, circulating through coils of pipe, to be connected, by two readily detachable tubes, with the boiler of a steam fire-engine, and also with a tank, so that when the engine is not on duty the hot water will circulate through the boiler, and keep the engine ready for immediate use, and through the tank, keeping the heating apparatus in order when the engine is away. The claim is for "the combination, with a steam fire-engine, of a heating apparatus, constructed substantially as described, for the purposes fully set forth."

There were, before Brickill's invention, contrivances for heating water in coils of pipe connected by tubes with the boiler of a steam fire-engine, so that water would circulate through the boiler and aid in preparing the engine for immediate use, sometimes detachable when the engine was wanted, and sometimes going with the engine; but none of them were very effective. Those not detachable could not be effectively heated at all; and if those which were detachable were heated sufficiently to keep the water in the boiler hot when the engine was there, the heat, not having water to counteract it, would injure the apparatus when the engine was gone. Brickill overcame these difficulties, and, upon the evidence, he appeared to have been the first to do this. It is argued for the defendants that the patent is for the combination of a heating apparatus, generally, with a steam fire-engine, and that these prior devices show the combination for which the patent was granted, whatever Brickill may have invented, and that the invention described in the patent was anticipated.

The claim is for the combination of a heating apparatus

constructed substantially as described, and the construction described is of what was new with Brickill, so that this view cannot prevail.    He made the invention while in the employ of the fire department of the city of New York, and attached the apparatus to two fire-engines, which were those numbered 12 and 26, himself, and it appears to have gone into extensive use in that fire department, and to have been of great utility in obtaining speedy control of fires.    To make it required more than mere mechanical skill or workmanship applied to what was in existence or known before.    The principles of it were to be wrought out, and devices to be constructed and applied to meet the necessary requirements. The accomplishment of the result involved the exercise of inventive faculties to a considerable degree, which, concurring with the utility, clearly makes the invention patentable.

The patent was granted under the acts of 1836 and 1839, and the constructions attached to engines Nos. 12 and 26 were made and attached before the application for a patent. It is strenuously argued that under section 7 of the latter act, which provides that every person and corporation may use, and vend to others to be used, any specific machine, manufacture, or composition of matter which they have purchased or constructed prior to the application for a patent, as construed in *McClurg* v. *Kingsland*, 1 How. 202, the defendant has not only the right to use those constructions, but also the full right to practice the invention without liability.    5 St. at Large, 353.    The patent in that case was for a method of casting iron rollers so as to throw the dross into the center instead of leaving it on the surface, and the real question before the court was whether that statute, using the words "specific machine, manufacture, or composition of matter" only, should be applied to a patent for that process.    In some parts of the reasoning, language broad enough to cover all patents was used in coming to the conclusion that the statute should not be limited, in its application, to those patents only which were for some specific thing, and that it should apply to the invention itself where there was no such thing. It has been said that, in order to understand this language,

it must be considered with reference to the very case before the court. *Pierson* v. *Eagle Screw Co.* 3 Story, 402, 408.

The right to use the thing patented is secured against an extension of the patent to assignees and grantees by section 18 of the act of 1836, (5 St. at Large, 117.) This language is quite as broad as that of the act of 1839, and still, since the decision in *McClurg* v. *Kingsland*, it has been held to cover particular constructions, and not the right to practice the invention. The language of the act of 1839 does not seem capable of being extended beyond the use of particular things bought or made in cases of patents for substantive things, and it is not probable that *McClurg* v. *Kingsland* would be followed beyond cases of its class upon the same statute. *Wilson* v. *Rosseau*, 4 How. 646. But in the act of 1870, section 37, (16 St. at Large, 203,—Rev. St. § 4899,) the right of a person constructing a patentable article, or purchasing it before the application for a patent, is limited to the right to use, or vend for use, the specific thing. This may be considered as a legislative construction of the former acts; but, if not, congress has full power over the subject of patents, unless it be as to the right to take away property secured by existing patents; and this act of 1870 may properly govern the right of recovery in actions brought since its passage. This was expressly held, as to the act of 1836, in *McClurg* v. *Kingsland*. So, in any view which can be taken of this case, it does not seem that the defendant has any right to this invention any further than to the extent of machines constructed prior to the application for the patent.

It is urged that an infringement by the fire department of the city is not an infringement by the defendant, because that defendant was, under the law, a corporation of itself, over which the officers of the city had no control. It is understood, however, as was said in *Allen* v. *The Mayor, etc.*, that the fire department was a mere agency of the city, having no funds of its own, and making no profits for itself apart from those of the city. If there are any gains and profits in the hands of any party to be accounted for, under these circumstances, on account of an infringement, they must be in

the general treasury of the city, and the city itself must be liable to account for them.

It is further argued, that the case does not show any infringement by the fire department, even by using the patented invention. The answer does not really deny, but rather admits, what would amount to an infringement. If that were not so the proofs fairly show infringement to some extent; to what extent, if to any, before the bringing of the bill, is not now material. The extent is a matter to be settled in the accounting.

Let there be the usual decree for an injunction and an account, with costs.