## Keller and others *v.* Stolzenbach and others

(*Circuit Court, W. D. Pennsylvania.* March 20, 1884.)

1. Former Judgment—When a Bar.

A decree under equity rule 38 dismissing the plaintiff's bill because of his failure to reply to a plea or set it down for argument, is not conclusive, since all the authorities agree that in order to constitute the former judgment or decree a bar it must appear that the point in issue was judicially determined after a hearing and upon consideration of the merits.

2. Patents for Invention—Partner Inventing Machine—Use by Firm—License.

During the existence of a partnership between two persons one of them invented a machine upon which a patent was granted to him. The firm paid the fees and costs of procuring the patent and the expenses of an experimental trial of the invention and also the expenses of some litigation which ensued. It appeared, however, that all the outlay of the firm was more than repaid by the benefits arising from the free use of the patented machine in the partnership business. *Held,* that upon these facts no implied license arises to the member of the firm not the inventor to make, use, and vend the patented machine after the dissolution of the partnership.

In Equity.

*Bakewell & Kerr* and *D. F. Patterson,* for complainants.

*Geo. H. Christy,* for defendants.

Acheson, J. Nicholas J. Keller, one of the plaintiffs, and Philip M. Pfeil, one of the defendants, entered into partnership on April 26, 1870, in the business of dredging and dealing in sand and gravel, the partnership lasting until April 10, 1875, when it was dissolved by mutual consent. During the existence of the partnership Keller invented a sand and gravel separator, for which letters patent were granted to him on May 21, 1872. With his consent, and at the firm expense, the patented apparatus was put on two boats owned by the firm,—one called the Hippopotamus, the other the Rainbow,—and was used thereon without charge during the continuance of the partnership. The firm paid the fees and costs of procuring the patent, and the expenses of an experimental trial of the invention, and also paid the expenses of some litigation which ensued. The evidence, however, tends to show that this outlay was more than made good by the advantage and benefits accruing to the firm from the free use of the invention on said boats. Upon the dissolution of the firm each partner took at an agreed value one of the boats,—Keller, the Hippopotamus, Pfeil the Rainbow,—each then having the patented machine thereon. A contest immediately arose as to the right of Pfeil to use the patented machine on the Rainbow, and Keller filed a bill in this court to restrain such use, alleging that the privilege had not passed with the boat. The decision of the court, however, was against him, and his bill was dismissed. Subsequently Pfeil built another boat called the Wharton McKnight, and placed and used thereon the patented apparatus. Thereupon Keller filed in this court another bill against Pfeil and his associates to restrain the in-

fringement of his patent. To this bill the defendants filed a plea setting up the same matters of defense now relied on. To this plea the plaintiff did not reply, nor did he set down the same for argument. Wherefore a decree dismissing the bill was entered under, and in the terms of the thirty-eighth rule in equity, viz. :

"If the plaintiff shall not reply to any plea, or set down any plea or demurrer for argument, on the rule-day when the same is filed, or on the next succeeding rule-day, he shall be deemed to admit the truth and sufficiency thereof, and his bill shall be dismissed as of course, unless a judge of the court shall allow him further time for the purpose."

The defendants plead the decree entered under this rule in bar of so much of the present bill as relates to the Wharton McKnight, or the use of the patented invention thereon. Whether this position is well taken is the first question in the case. That such decree is not conclusive, is, I think, evident from the authorities, they all agreeing that in order to constitute the former judgment or decree a bar, it must appear that the point in issue was judicially determined after a hearing, and upon consideration of the merits. 1 Greenl. Ev. §§ 529, 530; Story, Eq. Pl. § 793; *Badger* v. *Badger*, 1 Cliff. 237, 245; *Haws* v. *Tiernan*, 53 Pa. St. 192; *Hughes* v. *U. S.* 4 Wall. 232. In *Homer* v. *Brown*, 16 How. 354, it was held that a judgment of *nonsuit*, entered upon an agreed statement of facts submitted to the court for decision, was not a bar to a subsequent suit between the same parties, and for the same cause of action. Says CLIFFORD, J., in *Badger* v. *Badger*, *supra*, if the order of dismission was not upon the merits of the bill, it matters not whether it was with or without the consent of the complainant. And Mr. Justice FIELD says in *Hughes* v. *U. S. supra*, "if the first suit * * * was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit." 4 Wall. 237. Now, the primary purpose of rules of court being to regulate the practice, and promote the dispatch of business, the intention to create an estoppel ought not to be lightly imputed to the rule now under consideration. Such effect, it seems to me, is foreign to the object to be subserved. True, the rule declares that the plaintiff so in default "shall be deemed to admit the truth and sufficiency" of the plea, but this implied admission is merely for the occasion, and to open the way for a decree of dismission "*as of course,*" without trial, hearing, or adjudication,—a decree which is the equivalent of a judgment of *nonsuit* at law for want of a narr or other default of a like nature.

It appears that the defendants are not only using the invention on the Wharton McKnight, but that they have built another boat, the Little Ike, upon which they intend (it is admitted) placing and using a sand and gravel separator constructed pursuant to Keller's patent; and they defend generally, upon the ground that Pfeil is invested with a license to make, use, and sell the patented machine. No express license is shown and none is asserted in view of the proofs. The

defendants stand on an implied license. But if such license exists it must spring from the facts heretofore stated, viz., the invention by Keller during the partnership between him and Pfeil, the free use, with Keller's consent, by the firm, of the patented apparatus upon their boats, and the payment by the firm of the fees, costs, and expenses of procuring the patent, etc. But I cannot see that these facts afford any solid foundation for the defense set up. In *McWilliams Manuf'g Co.* v. *Blundell,* 11 FED. REP. 419, upon a substantially similar state of facts, it was held that the firm could make no claim to the patent, and, after dissolution, an injunction to restrain infringement issued against the late partner. Here the merit of the invention is Keller's exclusively. He is indebted to Pfeil for no ideas or suggestions. The letters patent were never treated as partnership property. At the dissolution of the firm the partners made a schedule of the firm assets, at agreed valuations, with a view to a division, but the patent was not in that schedule. The claim which Pfeil then asserted was the right to use the patented apparatus with which the Rainbow was equipped. To that extent his demand was reasonable and just, and it was sustained. But now he practically insists upon an equitable ownership in the patent, for he claims the unlimited right, individually and in connection with his present partners, to make, use, and vend the patented apparatus. But no express agreement is shown whereby the firm or Pfeil acquired any interest in the patent. If the firm paid the expenses connected with the issue of the patent, etc., they received a full equivalent in the use of the invention upon their two boats, free of royalty, and in the absence of direct proof of any other or greater right in the firm, none is fairly inferable from the facts as they appear.

Our conclusion that Pfeil's right to use the invention is limited to the construction on the Rainbow, finds support in adjudged cases. *Brickill* v. *Mayor, etc., of New York,* 7 FED. REP. 479; *Wade* v. *Metcalf,* 16 FED. REP. 130. Nor does this view conflict with the decisions cited by the defendants. In the nature of the case (the invention being a process) the presumed license in *McClurg* v. *Kingsland,* 1 How. 202, was unlimited, and justly so under the circumstances. In *Chabot* v. *American Button-hole, etc., Co.* 6 Fish. 71, the facts were not only substantially similar to those in *McClurg* v. *Kingsland,* but there was the additional element of an express contract, the terms of which greatly strengthened the presumption of an unrestricted license. The subject-matter of the patent in *Slemmer's Appeal,* 58 Pa. St. 155, was a process which, if legally the invention of one partner, was in fact the result of partnership labor, experiment, and development, and the dealings of the partners with each other had been of such a character that it would have been grossly inequitable to deny to any of them the right to use the invention. In *Kenny's Patent Button-holing Co.* v. *Somervell,* 38 Law Times Rep. 878, the partnership was formed for the sole purpose of working the patented in-

vention, and had been conducted for several years, during which time the partner whom it was attempted arbitrarily to enjoin had aided in perfecting the invention and invested his capital in the business.    It was a clear case (as was *Slemmer's Appeal*) of a dedication of the use of the invention to the partnership, without limit as to time.    But of any such dedication of Keller's patent there is a lack of evidence, and the equity of Pfeil is fully satisfied by the use of the patented apparatus on the Rainbow.

Let a decree be drawn in favor of the plaintiffs, in accordance with the views expressed in this opinion.