(16 Misc. Rep. 593)

NIAGARA RADIATOR CO. v. MEYERS.

(Supreme Court, Special Term, Erie County. April, 1896.)

CONTRACTS—AGREEMENT BY EMPLOYE TO ASSIGN INVENTION.
    On an issue as to whether defendant had transferred to plaintiff the right to an invention, it appeared that plaintiff employed defendant as foreman at $3.50 per day, to take charge of a machine which plaintiff had

not been able to work satisfactorily. Afterwards a new machine became necessary, and defendant informed plaintiff that he could improve the machine by a certain invention of his own. Plaintiff had not known before that defendant was an inventor, and nothing was said at the time of his employment about his invention. After being advised by an attorney that he would not surrender any of his rights by having an experimental machine constructed, defendant proceeded with the construction of the machine. Plaintiff paid him nothing therefor, gave him no increase of wages, or any fixed term of employment. *Held,* that the evidence did not show an agreement by defendant to transfer his invention to plaintiff.

Action by the Niagara Radiator Company against Nicholas Meyers to restrain the use of certain photographs, drawings, etc., of machinery in plaintiff's shop. A temporary injunction was granted, and defendant now moves to vacate the same. Granted.

William Macomber, for plaintiff.
James A. Allen, for defendant.

WOODWARD, J. This is an action on the part of the plaintiff to restrain the defendant from using certain photographs, drawings, plans, and specifications of the machinery in the shop of the plaintiff for the purpose of securing letters patent upon an alleged invention or improvement, upon the ground that the machinery and processes employed by the plaintiff are secrets of trade, and as such the property of the plaintiff, and that by publishing the said photographs, drawings, plans, and specifications, rival institutions will be enabled to modify and use the said secret processes, to the great injury of the plaintiff. The court granted a preliminary injunction, which the defendant now asks to have dissolved. The facts which are either conceded, or established by a preponderance of testimony, and which are essential for the determination of the questions involved, are as follows: The Niagara Radiator Company is a corporation doing business at North Tonawanda, Niagara county, where it has been in business since August, 1894, engaged in the manufacture of radiators. Some time prior to the beginning of manufacturing, the plaintiff entered into an agreement with the Queen City Engineering Company, of Buffalo, N. Y., to construct exclusively for the plaintiff a certain facing and reaming machine, which the said Queen City Engineering Company "warrants and guaranties ＊ ＊ ＊ shall be perfect in all its parts, and do its work perfectly, and as well and quickly as the remaining machines now in use in the Standard Radiator Works in Buffalo." This machine, when placed in the shop of the plaintiff, failed to work satisfactorily, and Charles F. Walther, the vice president and manager of the plaintiff, entered into negotiations with the defendant, who was at that time employed as foreman of the Standard Radiator Works, to take charge of the works of the plaintiff, as foreman, at $3.50 per day. The defendant entered the employ of the plaintiff on or about the 20th day of August, 1894, at which time the plaintiff had not been able to place a completed radiator upon the market. Within a short time the defendant had put the machinery in operation, and had placed several radiators upon the market. The machines in use in the shops of the plaintiff are such as are commonly used, and such as were in use in

the shops of the Standard Radiator Works at the time of the employment of the defendant, with the exception of the machine which the defendant now seeks to have protected by letters patent. Subsequent to entering the employ of the plaintiff, and in the month of April, 1895, it became necessary to construct another reaming and facing machine, when the defendant proposed that use be made of certain improvements, which he had invented, in the construction of the new machine; and it was agreed that the machine should be made in accordance with the drawings submitted by the defendant, and which were made and completed during the time the said defendant was in the employ of the Standard Radiator Company. The machine was built under the direction of the defendant, use being made of the property, materials, and labor of the plaintiff; and it is now in operation in the shop of the plaintiff, who seeks to have it declared a part of its property, as a part of its secret process of manufacture.

The constitution of the United States provides that "the congress shall have power * * * to promote the progress of science and the useful arts, by securing for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries" (article 1, § 8, subd. 8); and, acting under this specific delegation of power, the congress has enacted a law which prescribes in detail the steps necessary for the procurement of letters patent. There can therefore be no question as to the right of the individual citizen of the United States to seek the protection of letters patent for his own invention, provided he has not parted with his right of property in such invention. He is, moreover, entitled to the presumption of ownership of the property in such invention; and, before he can be restrained from the enjoyment of the rights guarantied to him in his capacity as a citizen of the United States, it must be established that he has parted with these rights for a good and sufficient consideration. Public policy suggests that, "to promote the progress of science and the useful arts," letters patent shall issue to authors and inventors; and a contract which contravenes public policy, and which seeks to give a monopoly of an advance in "science and the useful arts" to an individual or corporation, cannot be presumed. It must be clearly established. That is the real question at issue in this action,—whether the defendant has parted with his right of property in the invention now in use in the shop of the plaintiff. Mr. Justice Brewer, in delivering the opinion of the court in Solomons v. U. S., 137 U. S. 342, 11 Sup. Ct. 89, says:

"An employé performing all the duties assigned to him in his department of service may exercise his inventive faculties in any direction he chooses, with the assurance that whatever invention he may thus conceive and perfect is his individual property. * * * But this general rule is subject to these limitations: If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto ʀ.ᴣ against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers, and that which they are able to accomplish, he has sold in advance to his employer. So, also, when one is in the employ of another, in a certain line of work, and devises an improved method or instrument for doing that work,

and uses the property of his employer and the service of other employés to develop and put in practical form his invention, and explicitly assents to the use by his employer of such invention, a jury, or a court trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment, and the benefits resulting from the use of the property and assistance of co-employés of his employer, as to have given to such employer an irrevocable license to use such invention."

This doctrine was strongly asserted in the case of McClurg v. Kingsland, 1 How. 202, quoted by Mr. Justice Brewer in the above case.

It is proper to consider, therefore, the testimony bearing upon the question of a contract between the plaintiff and defendant, as tending to establish the existence of such a contract as would justify this court in continuing the order restraining the defendant from making use of the photographs, drawings, plans, and specifications now in his possession in the securing of letters patent to protect his invention. It will probably not be seriously contended on the part of the plaintiff that there was any contract between the parties to this action, at the time the defendant, Meyers, entered the employ of the plaintiff, which contemplated the transfer of any inventions which the said defendant may have made prior to such employment, or that there was any contract other than one carrying the obligations of an employé in a responsible position to an employer. The plaintiff, in its verified complaint, admits having gone to the defendant, seeking his services, because the men in his employ were unable to operate certain machines; and while it might be conceded that his inventive faculties were purchased in the contract, in so far as the operating of the machines then in use were concerned, there is nothing to establish the fact that his previous inventions were involved, and the presumption is untenable, because the rate of compensation, $3.50 per day, was not excessive or unusual in the employment of men capable of taking charge of and operating an important manufacturing plant. The defendant, his wife, his son, and his daughter, in their affidavits, state that there was no mention of any invention in either of the two talks which occurred between the contracting parties prior to the defendant entering the employ of the plaintiff, and there is no direct assertion of the fact on the part of the plaintiff. This brings us to the time it was found necessary to construct a new machine for the use of the plaintiff. Charles F. Walther, vice president and manager of the plaintiff company, says in the complaint that in March, 1895, the defendant informed "plaintiff he could materially improve such machine [the reamer and facing machine] by mechanical improvements which he had made." This seems to have been the first intimation which the plaintiff had that the defendant was an inventor, and Mr. Walther, in behalf of the plaintiff, demanded to see the drawings before deciding what action he would take. After consulting an attorney, and being advised that he would surrender no right in the invention by having an experimental machine constructed, the defendant produced the drawings; and, after having them explained to him, the manager of the plaintiff company ordered the defendant to begin the work of constructing the machine. There is no allegation on the part of the plaintiff that

there was any consideration to the defendant, other than the privilege of constructing an experimental machine at the expense of the company; and Mr. Walther is careful to assert in his affidavit opposing this motion "that at no time was there any agreement made as to the length of time during which defendant should be employed by the plaintiff, but in the agreement that machines and mechanical processes should be kept secret, and not patented, it was agreed and understood that the same should be without reference to the employment of defendant by plaintiff." There was no increase of wages, no agreement as to the length of term of service, and absolutely no advantage to flow to the defendant by reason of his invention, made prior to his employment by the plaintiff; this latter fact being established by the testimony of at least four competent witnesses, and practically conceded in the complaint, where the "plaintiff demands judgment against said defendant, adjudging and decreeing it to be the sole and exclusive owner and holder, and exclusively entitled to the right to use and employ the said several improved machines, devices, and mechanical processes designed and made by said defendant in plaintiff's shops, and while in its employ, including the machines designed prior to said employment, and reduced to practice and constructed and employed in plaintiff's shops by said defendant while in plaintiff's employ." On the contrary, the defendant swears that there was no agreement, except that the plaintiff was to have the use of the experimental machine, and that he distinctly gave notice that he was going to have the invention patented. In this he is sustained by the testimony of his son, and collaterally by one or two other witnesses. The testimony, so far from establishing the fact of a contract existing between the parties to this action warranting the continuance of this injunction, is overwhelmingly against it; and as it does not appear that any photographs, drawings, plans, or specifications of any of the machines, tools, or appliances of the plaintiff, aside from the experimental machine designed and invented by the defendant prior to entering the employ of the plaintiff, were taken or removed from the shops of the plaintiff, to deny this motion would be such a substantial violation of individual rights that it could not be justified upon any correct conception of public policy. The motion to dissolve the injunction is therefore granted, with $10 costs.

Motion granted, with $10 costs.