Lawrence GOLAN, Richard Kapp, S.A. Publishing Co., Inc., d/b/a Ess.A.Y Recordings, Symphony of the Canyons, Ron Hall, d/b/a Festival Films, and John McDonough, d/b/a Timeless Video Alternatives International, Plaintiffs,

v.

John ASHCROFT, in his official capacity as Attorney General of the United States, Defendant.

No. CIV.A.01–B–1854(BNB).

United States District Court, D. Colorado.

March 15, 2004.

Lawrence Lessig, Esq., Edward Lee, Esq., Stanford, CA, Jonathan L. Zittrain, Esq., Charles R. Nesson, Esq., Cambridge, MA, for Plaintiffs.

Joshua Z. Rabinovitz, Vincent M. Garvey, Assistant U.S. Attorneys, Washington, DC, for Defendants.

## ORDER

BABCOCK, Chief Judge.

This case is before me on Defendant, John Ashcroft's Renewed Motion to Dismiss, filed pursuant to Fed.R.Civ.P. 12(b)(6), on the grounds that Plaintiffs' First Amended Complaint fails to state claims upon which relief may be granted.

Oral argument would not materially assist in the determination of the motion. After consideration of the motions and the case file, I GRANT Defendant's Renewed Motion to Dismiss as to Count 4 of Plaintiffs' Amended Complaint, and DENY the motion as to Plaintiffs' remaining Counts 1, 2 and 3.

### I. Background

Plaintiffs, who consist of artists or purveyors of art material, filed a complaint seeking declaratory and injunctive relief regarding two "recent expansions" of the Copyright Act on the basis they are unconstitutional. Specifically, Plaintiffs assert that the Sonny Bono Copyright Term Extension Act of 1998 (the "CTEA"), Pub.L. No. 105–298 (*amending* 17 U.S.C. §§ 301–304), and § 514 of the Uruguary Round

Agreements Act (the "URAA"), Pub.L. No. 103–465 (*amending* 17 U.S.C. §§ 104A, 109(a)), unconstitutionally remove from, or staunch the flow of, literary and artistic works into the public domain.

After Plaintiffs filed their initial Complaint, and Defendant filed a responding Motion to Dismiss, the United States Supreme Court granted certiorari to review *Eldred v. Reno*, 239 F.3d 372 (D.C.Cir. 2001), which addressed the constitutionality of the CTEA. As a result, and over Plaintiffs' objection, I stayed these proceedings until the Supreme Court's decision in that case was announced.

On January 15, 2003, the Supreme Court announced *Eldred v. Ashcroft*, 537 U.S. 186, 123 S.Ct. 769, 154 L.Ed.2d 683 (2003). In response to that decision, Plaintiffs filed a First Amended Complaint on April 16, 2003. Defendant then filed the Renewed Fed.R.Civ.P. 12(b)(6) Motion to Dismiss, at issue here, on April 30, 2003.

## II. Analysis

Under the Copyright and Patent Clause of the United State Constitution, Congress is granted the power and the limitation "to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. Art. I § 8, cl. 8.

The CTEA, passed in 1998, enlarged the existing copyright term for a period of twenty years. For example, it expanded the basic copyright term to the life of the author, plus seventy years, as opposed to the fifty year time period that was in place previously. *See* 17 U.S.C. § 302(a).

Section 514 of the URAA restores copyright protection to original works of foreign origin whose authors lost their copyrights for failure to comply with specific U.S. copyright formalities that have since been repealed. *See* 17 U.S.C.

§ 104A(h)(6)(C)(I). Copyrights restored by the URAA are reconstituted for the remainder of the period that should have been granted had the work been protected from its inception. *See* 17 U.S.C. § 104A(a)(1)(B).

Under Fed.R.Civ.P. 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can plead no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A claim may be dismissed either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a cognizable legal claim. Fed. R.Civ.P. 12(b)(6); *Morey v. Miano*, 141 F.Supp.2d 1061, 1062 (D.N.M., 2001).

In evaluating a Fed.R.Civ.P. 12(b)(6) motion to dismiss, "all wellpleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Wildwood Child & Adult Care Food Program, Inc. v. Colorado Dept. of Public Health and Environment*, 122 F.Supp.2d 1167, 1170 (D.Colo.2000).

## A. The CTEA Claim [Count 4]

■ Count 4 of Plaintiffs' Amended Complaint alleges that, as a result of the CTEA, the average copyright term is now 95 years—a term that is "staggeringly long"—causing harm to Plaintiffs, who relied on the previous copyright terms, as well as to the public. Plaintiffs contend that the requirement in the Copyright and Patent Clause that copyright terms be "limited" is more restrictive than a requirement that the term be "fixed," and that the CTEA's expansion results in a period of protection that grants the author 99.8% of its economic value, and only .2%

of its value to the public. Plaintiffs further argue that the framers of the Constitution would have viewed the life–plus–70–year term as "effectively or virtually perpetual" in light of the economic realities and the fact that the term "limited" is more restrictive than that the term "fixed."

However, I agree with Defendant that Plaintiffs' CTEA claim is foreclosed by the Supreme Court's holding in *Eldred v. Ashcroft, supra.* In *Eldred,* the Supreme Court ruled, on the Petitioners' claim that Congress exceeded its authority under the Copyright and Patent clause, that the CTEA did not violate the constitutional requirement that copyrights endure for "limited Times." Although the Petitioners in *Eldred* did "not challenge the 'life–plus–70–years' timespan itself," *id.* 537 U.S. at 193, 123 S.Ct. 769, the Supreme Court approved the Court of Appeals determination—when addressing the argument that Congress evaded the "limited Times" constraint by creating effectively perpetual copyrights through repeated extensions— that "a regime of perpetual copyrights 'clearly is not the situation before us.'" *Id.* at 209, 123 S.Ct. 769 *(quoting Eldred v. Reno,* 239 F.3d at 379). In support of this determination, the Supreme Court noted that Copyright Extension Acts in 1831, 1909, and 1976, "did not create perpetual copyrights, and neither does the CTEA." *Id. at* 210, 123 S.Ct. 769.

Furthermore, the Supreme Court specifically rejected the argument made by Justice Breyer in his dissent, and advanced by Plaintiffs here, that the "economic effect" of the CTEA, which allegedly creates a copyright term worth 99.8% of the value of a perpetual copyright, makes the term "virtually perpetual." *Id.* at 209 n. 16, 123 S.Ct. 769. The Supreme Court indicated that "[i]t is doubtful that those architects of our Nation, in framing the 'limited Times' prescription, thought in terms of

the calculator rather than the calendar." *Id.*

The Supreme Court in *Eldred v. Ashcroft* held that the extension of the copyright term in the CTEA was constitutional, in that it was not effectively or virtually perpetual, despite the fact that the Petitioners there did not directly challenge the time-span provided for in the CTEA. Consequently, I conclude that Plaintiff's legal arguments challenging to the time limitation in the CTEA is foreclosed by the *Eldred* decision and, as such, Plaintiffs have asserted a legal theory not cognizable as a matter of law which should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### B. The § 514 URAA Claims

#### 1. Violation of the Copyright and Patent Clause [Count 1]

■ Plaintiffs' Amended Complaint also alleges that § 514 of the URAA violates the Copyright and Patent Clause because, they assert, once a work goes into the public domain Congress cannot remove it from free use by granting a restored copyright. Plaintiffs' argument is premised on the requirement in the Copyright and Patent Clause that copyright laws "promote the Progress of Science and useful Arts" and, as such, the removal of copyrights from the public domain is unconstitutional in that it does not promote such progress.

In his motion to dismiss, Defendant first argues that Plaintiffs' claim here is not legally cognizable because Congress has the power to restore protection to public domain works pursuant to *McClurg v. Kingsland,* 42 U.S. 202, 1 How. 202, 11 L.Ed. 102 (1843). In that case, James Harley invented a mode of casting chilled rollers in October of 1834. At the time, he was employed in the Defendant's foundry and he allowed the Defendant employer to use his invention until January or Febru-

ary of 1835, when he left its employ. Harvey then applied for a patent and assigned it to his new employer in February of 1835. However, his ex-employer continued to use the invention until the new employer brought suit in October 1835.

As explained in *Eldred,* the *McClurg* court determined that Harvey was "unprotected under the law in force when the patent issued because he had allowed his [ex-]employer briefly to practice the invention before he obtained the patent. Only upon enactment, two years later, of an exemption for such allowances did the patent become valid, retroactive to the time it issued." *Eldred,* 537 U.S. at 186. The *McClurg* Court upheld retroactive application of the new amended laws "for though they may be retrospective in their operation, that is not a sound objection to their validity." *McClurg,* 42 U.S. at 206, 42 U.S. 202.

Contrary to Defendant's assertion, *McClurg* did not address the use of the invention after its creation and prior to Harvey's patent application, at which point Defendant asserts it was in the public domain. Therefore, *McClurg* is distinguishable because it only upheld the protection of an existing patent, rather than gave a patent to an invention that was first in the public domain. *See Eldred v. Ashcroft,* 537 U.S. at 203 n. 9, 123 S.Ct. 769 ("[i]t is thus inescapably plain that *McClurg* upheld the expanded patent application to an existing patent").

Plaintiffs, on the other hand, rely upon the Supreme Court's decision in *Graham v. John Deere Co.,* 383 U.S. 1, 6, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), which held that "Congress may not authorize the issuance of patents whose effects are to remove existent knowledge from the public domain, or to restrict free access to materials already available." However, the rule in *Graham v. John Deere* has been deemed

to be limited only to applications for patents. *See Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.,* 331 F.3d 472, 483 n. 33 (5th Cir.2003)(rejecting the assertion that *Graham* is applies to copyright laws because "[p]atents, however, are not copyrights, and thus patent cases are inapposite to copyright cases"); *but see Eldred,* 239 F.3d at 377 (district case)(indicating that *Graham* "would indeed preclude Congress from authorizing under [the Patent and Copyright] Clause a copyright to a work already in the public domain").

Alternatively, Defendant argues that dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate because the history of copyright legislation indicates that § 514 of the URAA is a valid exercise of Congress's power under the Copyright and Patent Clause. Defendant refers me to the various copyright and patent acts passed by Congress, as well as presidential acts exercising the copyright restoration power, which he intends establish a clear tradition of providing protection to works once in the public domain.

In response, Plaintiffs dispute the historical characterization made by Defendant, and asserts that there is no clear history for the restoration of copyrights in the public domain. For example, they note that the 1909 Copyright Act expressly prohibited the grant of a copyright to a work in already in the public domain. They also assert that the Presidential Acts, which may or may not have removed material from the public domain, were only to address the "emergency" of world wars that caused the suspension of facilities essential for compliance.

Plaintiffs' claim that § 514 of the URAA violates the Copyright and Patent Clause because Congress cannot pass a copyright law that removes works from the public domain, is not legally foreclosed. Hence, I

conclude that Plaintiffs legal theory raised here is cognizable as a matter of law and does not require dismissal pursuant to Fed.R.Civ.P. 12(b)(6).

### 2. Right to Free Speech [Count 2]

■ Plaintiffs also aver in their Amended Complaint that § 514 of the URAA restricts their right to free speech under the First Amendment because while they once could publish works in the public domain, they cannot now do so for those works that copyrights have been restored.

In *Eldred,* the majority held that the purpose of copyright protection is to promote free expression by allowing communication of facts, while still protecting the author's expression. *Eldred v. Ashcroft,* 537 U.S. at 219–220, 123 S.Ct. 769 (*citing Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). The Court further determined that the fair use defense allows the public to use some of the facts, ideas and expressions in a copyrighted work and, thus, concluded that the CTEA provided appropriate free speech safeguards. *Id.* at 219, 123 S.Ct. 769. As such, the Supreme Court rejected the Petitioners' "plea for imposition of uncommonly strict scrutiny on a copyright scheme that incorporates its own speech-protective purposes and safeguards to the CTEA's extension to existing copyrights." *Id.* at 219, 123 S.Ct. 769.

Plaintiffs assert, however, that § 514 of the URAA alters the traditional contours of copyright protection—in that it modifies the basic principle that works in the public domain are not copyrightable, and it alters the first sales doctrine—and, thus, First Amendment scrutiny is appropriate under *Eldred. Id.* at 191, 123 S.Ct. 769 (when "Congress has not altered the traditional contours of copyright protection, further First Amendment scrutiny is unneces-

sary"). In response, Defendant asserts that § 514 of the URAA does not alter the "traditional" safeguards unbodied in copyright protection vis a vis the First Amendment.

Plaintiffs' argument adequately distinguishes the free speech holding in *Eldred* to the challenge made here. Hence, I conclude Plaintiff's second count states a cognizable legal theory that survives Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

### 3. Substantive Due Process [Count 3]

■ Finally, Plaintiffs assert that their right to due process under the Fifth Amendment has been violated because § 514 of the URAA results in retroactive legislation that is fundamentally unfair. Plaintiffs contend that retroactive restoration of copyrights unsettles their reasonable expectations about the free availability of public domain works and, thus, deprives them of their property without due process of law. They further allege that they expended a considerable amount of time, money and resources in their business to perform or make available public domain works to the public, and that they had purchased works that had entered the public domain.

Plaintiffs rely on Justice Kennedy's concurrence in *Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), for the proposition that retroactive legislation that unfairly burdens individuals and disrupts settled expectations is arbitrary and, thus, violates due process. *See also Unity Real Estate Co. v. Hudson,* 178 F.3d 649, 670 n. 13 (3rd Cir.1999)(focusing on Justice Kennedy's explication of the relevant due process principles in *Eastern Enterprises* because the plurality did not reach the due process claim).

In response, Defendant asserts that § 514 of the URAA is not retroactive in that it does not extend protection backwards in time to the point where the protection first lapsed, but rather governs future protection of the previously unprotected work. Defendant further contends that even if § 514 of the URAA is retroactive, it is constitutional in that it passes the rational basis test.

 Although legislative processes that readjust rights and burdens is not unlawful solely because it upsets otherwise settled expectations, such acts "adjusting the burdens and benefits of economic life [carry] ... a presumption of constitutionality, and ... the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); *see also Sheridan Square Partnership v. U.S.*, 66 F.3d 1105, 1108 (10th Cir.1995).

In response, Plaintiffs argue that § 514 of the URAA, as retroactive legislation, does violate the arbitrary and irrational substantive due process test articulated in *Anker Energy Corp. v. Consolidation Coal Co.*, 177 F.3d 161 (3rd Cir.1999).

Again, although this claim may ultimately be unsuccessful, I conclude that Plaintiffs have adequately stated a legally cognizable claim pursuant to Fed.R.Civ.P. 12(b)(6).

Accordingly, IT IS ORDERED:

1. That Defendant's Renewed Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED as to Count 4 of Plaintiffs' Amended Complaint, and Count 4 is DISMISSED; and

2. That Defendant's Renewed Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) is DENIED as to Counts 1, 2, and 3 of Plaintiffs' Amended Complaint.