## BARTON v. NEVADA CONSOLIDATED COPPER CO.

### No. G–9.

District Court, D. Nevada.

March 16, 1932.

See also 36 F.(2d) 85.

Frey, Oliver & Maerlender, of Cleveland, Ohio, and Harwood & Diskin, of Reno, Nev., for plaintiff.

Chas. M. Fryer, Alfred C. Aurich, and Chandler & Quayle, all of San Francisco, Cal., for defendant.

NORCROSS, District Judge.

This is a suit by plaintiff to enjoin alleged infringement of patent No. 1,662,357, dated March 13, 1928, issued to plaintiff for an "abrasive resisting metal and process for making same," also, to require defendant to account for the benefits to it derived from the use of such process.

To plaintiff's complaint defendant by answer has set up the following defenses:

That, assuming the process described in the patent to be patentable, and to have been used by defendant, such use was with plaintiff's consent and for a time preceding application for patent.

That, assuming the patent to be valid, plaintiff cannot plead title thereto as against defendant, for the reason the process patented was developed and perfected while plaintiff was an employee of defendant and in the course of such employment.

That defendant has not used the process described in the patent.

That the patent is void for anticipation, for want of invention, and for lack of sufficient disclosure.

The evidence discloses that early in 1925, the defendant installed at its concentrating and smelting plant at McGill, Nevada, an electric furnace for the manufacture of abrasive resistant steel balls and plates for use in defendant's ball mills for grinding ore. Upon the furnace being installed by the manufacturer supplying the same, the plaintiff was employed by defendant and placed in charge of its operation. The record of plaintiff's employment recites that he "will report for work on February 20, 1925, as steel metallurgist." His position was under the immediate supervision of the metallurgical engineer in general charge of defendant's research department. The latter testified: "I also explained the nature of his work, which I stated, in effect, was to supervise the operation of the electric furnace and giving particular attention to the operations involved and the perfection of those

operations that were involved in the production of grinding balls which I explained was the primary purpose of the installation of the electric furnace."

Defendant's general manager, Mr. Kinnear, testified: "I met Mr. Barton on the night of his arrival. * * * I explained to Mr. Barton the situation we had at McGill, that is, the fact that we had this large amount of structural steel scrap that we were left with as a result of this mill fire. I told him that we had purchased this furnace for the particular purpose of making balls and liners, and that he was hired for this particular purpose, for developing the operation so that we could make grinding balls and liners, abrasive castings and things of that nature, from this pile of structural steel which we had on our hands."

In a letter to Mr. Jackling, president of defendant corporation, of date May 16, 1928, Mr. Kinnear made the following statement: "I secured Mr. Barton from the locomotive works at Lima, Ohio, shortly after we had our electric furnace installed. Our purpose in getting him was to have a man on the job who was thoroughly familiar with electric furnace practice and get us out of the difficulties we were in when we first put this unit into operation."

Plaintiff testified: "When I went there they were having difficulty with their operations as they had no experienced man on electric furnaces employed by the Nevada Consolidated Copper Company, and I went there to take charge of the operation of such a furnace in order to put them on an efficiently operating basis."

In an article published by plaintiff he stated: "The writer was engaged to take charge of all operations in connection with the furnace and to develop metals peculiarly adapted for use around the mill and the plant in general."

Plaintiff's application for patent was dated August 24, 1926, and filed in the Patent Office September 1, 1926. In a letter written by plaintiff to defendant's general manager, of date April 4, 1928, appears the statement: "From the middle of 1925 up to January 1, 1928, this plant was making cast steel grinding balls under the original system of Larry J. Barton."

Plaintiff testified that his "process and discovery" had been completed and the "operation * * * of such process had been performed in the acid electric furnace at McGill prior to August 24, 1926." He further testified: "It was performed quite often before that particular date" and "particularly on each heat in which ball mill liners, or lifting bars or cheek plates, or such similar castings were poured."

From the testimony both of plaintiff and defendant, it quite clearly appears that the process used in defendant's electric furnace at McGill had not been materially changed for some considerable time prior to plaintiff's application for patent, and thereafter continued in use as before such application. Just when any change in the process was originally inaugurated does not clearly appear. From the evidence the court is unable to say that plaintiff's contention that his statement contained in his letter to Mr. Kinnear of April 4, 1928, that the process had been continued in use "from the middle of 1925," is materially erroneous.

Plaintiff does not contend that at the time of his employment by defendant, or at any time prior to his application for patent, he advised defendant that he was working upon an improved process with the view of perfecting it and ultimately applying for a patent thereon. While in part conceived prior to his employment, the process was perfected solely at the expense of defendant and while in defendant's employ. It was not until after plaintiff filed his application for patent that he took up with defendant's general manager the matter of allowing him compensation for the use by it of the process for which patent was applied for. A number of letters passing between plaintiff and defendant's general manager and between the latter and the president of defendant company dealt with the matter of compensation, but no agreement to compensate was ever reached; hence this suit.

■ Defendant, among other defenses, contends that it has the right to continue to use the process, assuming it to be the same as the process patented, without compensation therefor under the provisions of Rev. St. § 4899 (35 USCA § 48). The section reads: "Every person who purchases of the inventor, or discoverer, or with his knowledge and consent constructs any newly invented or discovered machine, or other patentable article prior to the application by the inventor or discoverer for a patent, or who sells or uses one so constructed, shall have the right to use, and vend to others to be used, the specific thing so made or purchased, without liability therefor."

■ It is the contention of counsel for plaintiff that this provision of the statute has no application to this case, for the reason that

plaintiff's patent is for a process, and hence is not embraced within the language of the section, "machine, or other patentable article." Counsel cite Walker on Patents (6th Ed.) Vol. 1, p. 208, Par. 208.

It must be conceded that the authority cited supports the contention. From the text we quote the following excerpt: "The rule stated at the head of the last section does not apply to a process patent. Sec. 4899 of the Revised Statutes treats only of machines or other patentable articles and confers exemption from the operation of patents upon nothing but specific things. Now a process is neither an article nor a thing. It is a series of acts. It is therefore outside the language of the law upon the subject. It is also outside the reason of that law. * * * "

In contrast to the views of the distinguished text-writer we find under the general heading "Notes of Decisions," and the subheading, "6. Rights as between employer and employee" (35 USCA § 48) the compiler's note, which reads: "This section has been usually applied to the case of employer and workman, and where a workman, by using the tools, time, and money of his employer with his consent, makes an invention and applies it in his employer's business, the employer may continue to use it, and where the improvement is a process, the employer may continue to practice the process for the whole period of the patent, but where the invention pertains to a machine, it is understood that only the specific machine, or machines which have been so made are licensed. Wade v. Metcalf (C. C. Mass. 1883) 16 F. 130, 131, affirmed (1889) 9 S. Ct. 271, 129 U. S. 202, 32 L. Ed. 661."

The statement quoted from the compiler's notes to the section was doubtless based on the authority therein cited. From the opinion in that case (Wade v. Metcalf [C. C.] 16 F. 131) we quote: "This section of the statute, which first appeared in the law of 1839, § 7, (5 St. 354) has been usually applied to the case of employer and workman. If the workman, by using the tools and time and money of his employer with his consent, makes an invention and applies it in his employer's business, the employer may continue to use it. If the improvement is a process, it has been held that the employer may continue to practice the process for the whole period of the patent. McClurg v. Kingsland, 1 How. 202 [11 L. Ed. 102]."

In considering the weight to be given to the opinion in the Wade v. Metcalf Case, it is proper to consider that a process patent was not directly involved in that case. Cohens v. Virginia, 6 Wheat. 399, 5 L. Ed. 257; Bramwell v. U. S. Fidelity & Guaranty Co., 269 U. S. 489, 46 S. Ct. 176, 70 L. Ed. 368. It is evident, however, that the court did not consider that there had been any material changes made in the act of 1870 (16 Stat. 203, § 37) warranting a departure from the construction placed upon the prior act of 1839, in respect to it being inclusive of a process patent. See, also, Boston v. Allen (C. C. A.) 91 F. 248, 251.

The prior Act of March 3, 1839 (5 Stat. 354, § 7) used the expression "machine, manufacture, or composition of matter." This provision of the statute came before the Supreme Court in the case of McClurg v. Kingsland, 1 How. (42 U. S.) 202, 208, 11 L. Ed. 102. As stated in the opinion in that case, the patent was "for an improvement in the mode of casting chilled rollers and other metallic cylinders and cones." From the opinion in that case we quote the following excerpt: "At the trial below, and here, the plaintiff's counsel have contended, that this act cannot apply to the present case, inasmuch as the protection it affords to the person who had the prior use, is confined to the specific machine, etc., and does not extend to such use of the invention, or thing patented, if it does not consist of a machine, etc., as contradistinguished from the new mode or manner in which an old machine or its parts operates. * * * But we think that the law does not admit of such construction, whether we look at its words or its manifest objects, when taken in connection with former laws, and the decisions of this court in analogous cases."

"Had the words 'invention,' or 'thing patented,' been used instead of machine, etc., there could have been no room for doubt of the application of the act to the present case. * * * We, therefore, feel bound to take the words 'newly-invented machine, manufacture, or composition of matter' and 'such invention,' in the act of 1839, to mean the 'invention patented,' and the words 'specific machine,' to refer to 'the thing as originally invented,' whereof the right is secured by patent."

Commenting on the McClurg Case the Supreme Court in the later case of Andrews v. Hovey, 124 U. S. 694, 8 S. Ct. 676, 677, 31 L. Ed. 557, said: "The first case in which the seventh section of the act of 1839 appears to have come under consideration in this court was that of McClurg v. Kingsland, 1 How. 202 [11 L. Ed. 102], decided in 1843.

• • • The patent was for an improvement in the mode of casting chilled rollers. It was, therefore, a patent for an improvement in a process."

The precise question whether a process patent is subject to the provisions of Rev. St. § 4899, does not appear to have been directly presented in other than the case at bar since the adoption of the statute of 1870. The question appears to be one of first impression in this case. The only material change from the language of the statute of 1839, was the substitution, following the word "machine" in both statutes, of the words "or other patentable article" for the words "manufacture, or composition of matter" appearing in the original act of 1839. Neither act used the word "process." There is nothing in the language of the section of the act of 1870 to indicate an intent upon the part of Congress to restrict the comprehensive construction placed by the Supreme Court on the corresponding section as it appeared in the act of 1839. It is clear, we think, that the words, "or other patentable article," were intended to have the same comprehensive meaning as the words "manufacture, or composition of matter" used in the prior statute. In both cases, as held in the McClurg v. Kingsland Case, they mean "invention" or "thing patented." While Mr. Walker in his treatise on patent law says "a process is neither an article nor a thing," it could with equal force be said it is not "a manufacture or composition of matter"; but the Supreme Court held the latter language to be inclusive of a process. More precise language might have been used in both sections, but the construction placed on the original section leaves little if any room to question the construction that should be placed on the section in its modified form. The act of 1870 was adopted by Congress in the light of the interpretation placed on the act of 1839, and, if it had been intended to depart from that construction, words clearly manifesting such intent would have been used.

The court is not impressed with the further contention of the author that a patent for a process is "outside the reason of the law." A patentable process developed and used by an employee while so employed and at his employer's expense is as much within the reason of the statute as would be a patentable machine constructed or so developed.

For the reasons stated, and without determining the other questions presented, the court is of opinion that plaintiff is not entitled to recover by reason of the provisions of the statute cited. Solomons v. United States, 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667; Lane & B. Co. v. Locke, 150 U. S. 193, 14 S. Ct. 78, 37 L. Ed. 1049.

Plaintiff's bill of complaint is dismissed.