## BARTON v. NEVADA CONSOL. COPPER CO. *
### No. 7127.

Circuit Court of Appeals, Ninth Circuit.
June 4, 1934.

*Rehearing denied Aug. 29, 1934.

382

Hugo A. Maerlender, of Cleveland, Ohio, and Chas. M. Frey, of San Francisco, Cal., for appellant.

Charles M. Fryer and Alfred C. Aurich, both of San Francisco, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from the order of the District Court dismissing appellant's bill of complaint seeking an injunction against further alleged infringement and for an accounting for benefits derived from the alleged use of appellant's process for making an "abrasive resisting metal" covered by United States letters patent No. 1,662,357 issued to appellant on March 13, 1928.

The opinion of the trial court [58 F. (2d) 646] was adopted as the findings of fact and conclusions of law required by Equity Rule 70½ (28 USCA § 723). The facts found by the trial court are supported by the evidence, and therefore will not be disturbed on this appeal. Briefly summarizing the findings of fact, the appellee early in 1925 installed in its concentrating and smelting plant in McGill, Nev., an electric furnace for the purpose of making abrasive resistant steel-grinding balls and liners for its mills for grinding ore. Prior to that time these balls and liners had been made in its furnace known as a "cupola" and the results had been unsatisfactory. After the installation of the electric furnace, which was a well-known equipment, Mr. Kinnear, appellee's general manager, was anxious to develop a method of operation which would produce the desired ball mill metal as economically and as satisfactorily as possible.

Appellant was employed by appellee company on February 20, 1925, as steel metallurgist in the research department for the express purpose of operating the new electric furnace and developing a method of making abrasive resistant steel balls and liners for appellee's mills. While in part conceived prior to his employment by appellee, the process upon which appellant later received a patent was perfected during the course of his employment and solely at the expense of appellee. Appellant used this process in the performance of his duties for appellee from the time it was perfected about the middle of 1925 until after he applied for a patent on the process on August 24, 1925, and therefore there is no escape from the conclusion that the process was used in the business of the appellee with the knowledge and consent of appellant prior to the application for the patent. Prior to applying for his patent, appellant had not advised appellee that he was working on an improved process with the idea of applying for a patent. After making his application for a patent on his process, appellant took up with appellee the matter of allowing him compensation for the use of the process by appellee, and, no agreement having been reached, appellant brought this suit.

The trial court dismissed appellant's bill of complaint on the ground that appellee had a right to use the process it was using, assuming it to be the same as the patented process, without compensation therefor, under the provisions of Rev. St. § 4899 (35 USCA § 48), which reads as follows: "Every person who purchases of the inventor, or discoverer, or with his knowledge and consent constructs any newly invented or discovered machine, or other patentable article, prior to the application by the inventor or discoverer for a patent, or who sells or uses one so constructed, shall have the right to use, and vend to others to be used, the specific thing so made or purchased, without liability therefor."

Appellant contends that this statutory provision has no application to the case at bar, for the reason that his patent of a process does not come within the meaning of the language "machine or other patentable article" as used in the statute. The sole authority for appellant's position is section 208 of Walker on Patents (6th Ed.) vol. 1, p. 208, which, it is conceded, supports that contention, but the author has not cited a single case in support of his view.

Section 4899 of the Revised Statutes, above quoted, which was section 37 of the Act of July 8, 1870, 16 Stat. 203, was derived from an earlier statute (section 7 of the Act of March 3, 1839, 5 Stat. 354) reading as follows: "And be it further enacted, That every person or corporation who has, or shall have, purchased or constructed any newly invented machine, manufacture, or composition of matter, prior to the application by the inventor or discoverer for a patent, shall be held to possess the right to use, and vend to others to be used, the specific machine, manufacture,

or composition of matter so made or purchased, without liability therefor to the inventor, or any other person interested in such invention. * * * "

This section (section 7 of the Act of March 3, 1839, supra) was construed to embrace a patent for a "mode of casting chilled rollers and other metallic cylinders and cones" in the early case of McClurg v. Kingsland, 1 How. (42 U. S.) 202, 210, 11 L. Ed. 102, where the Supreme Court said: "Had the words 'invention,' or 'thing patented,' been used instead of machine, etc., there could have been no room for doubt of the application of the act to the present case. * * * We, therefore, feel bound to take the words 'newly-invented machine, manufacture, or composition of matter' and 'such invention,' in the act of 1839, to mean the 'invention patented,' and the words 'specific machine,' to refer to 'the thing as originally invented,' whereof the right is secured by patent."

Appellant contends that the case of McClurg v. Kingsland, supra, is not authority for the proposition that the statute applies to a patent for a process since the patent involved in that case was not for a process. The contrary clearly appears from an interpretation and analysis of that case contained in a later decision by the Supreme Court, Andrews v. Hovey, 124 U. S. 694, 703, 8 S. Ct. 676, 677, 31 L. Ed. 557, from which we quote as follows: "The first case in which the seventh section of the act of 1839 appears to have come under consideration in this court was that of McClurg v. Kingsland, 1 How. 202 [11 L. Ed. 102], decided in 1843. * * * The patent was for an improvement in the mode of casting chilled rollers. It was, therefore, a patent for an improvement in a process. The patentee invented it while he was a workman in the employ of the defendants. They put it into use in their business. He left their employment, and then applied for and obtained his patent. His assignees sued the defendants in an action at law for continuing to use the improvement. There was a verdict for the defendants, upon the ground that, by reason of their unmolested, notorious use of the invention before the application for the patent, they had a right to continue to use it, under the provisions of the first clause of the seventh section. The judgment for the defendants was affirmed by this court upon that ground. It held that the defendants were on the same footing as if they had had from the inventor a special license to use his invention, given before he applied for his patent, and that the first clause of the seventh section extended to the invention or thing patented in that case, although it consisted of a new mode of operating an old machine, as contradistinguished from a patent for a machine. The court distinctly held that the words 'newly-invented machine, manufacture, or composition of matter,' and the words 'such invention,' in the first clause of the seventh section, meant the invention patented; and that the words 'the specific machine, manufacture, or composition of matter' meant the thing invented, the right to which was secured by the patent."

In Andrews v. Hovey, supra, it was also contended without success that the seventh section of the act of 1839 did not apply to a patent for a process. In Wade v. Metcalf (C. C.) 16 F. 130, 131, the court stated: "This section of the statute [Rev. St. § 4899], which first appeared in the law of 1839, § 7 (5 Stat. 354), has been usually applied to the case of employer and workman. If the workman, by using the tools and time and money of his employer with his consent, makes an invention and applies it in his employer's business, the employer may continue to use it. If the improvement is a process, it has been held that the employer may continue to practice the process for the whole period of the patent. McClurg v. Kingsland, 1 How. 202 [11 L. Ed. 102]; Chabot v. Am. Button-Hole, etc. Co., 6 Fish. Pat. Cas. 71 [Fed. Cas. No. 2567]."

It will be observed that the only changes in section 37 of the act of 1870, incorporated in the Revised Statutes as section 4899, from section 7 of the act of 1839, are that the words "machine or other patentable article" are substituted for "machine, manufacture, or composition of matter," and section 4899 provides that the construction, sale, or use of the "machine or other patented article" prior to application for patent be with the knowledge and consent of the inventor or discoverer. The latter provision of section 4899 is clearly met in the case at bar, since the appellant himself used the process in the performance of his work for appellee prior to making application for his patent. As to the other change in section 4899 there seems to be no decision construing the language "machine, or other patentable article," but there is nothing in the language used to indicate that Congress intended to restrict the comprehensive construction placed on the corresponding section of the earlier act by the Supreme Court. In view of the construction placed upon "machine, manufacture, or composition of matter" as used in the earlier act by the Supreme Court, it seems that, if Congress intended to exempt process patents from the operation of

section 4899, that intention would have been clearly manifested. We think that the words "machine or other patentable article" in Rev. St. § 4899, should be construed to have the same comprehensive meaning as the Supreme Court attributed to the words "machine, manufacture, or composition of matter" in the earlier act in McClurg v. Kingsland, supra; that is, "invention" or "thing patented." We are of opinion that a patent on a process is as much within the reason of the statute as a patent on a machine.

■ Aside from this statute the defendant is entitled to use the process under the equitable doctrine which is announced in U. S. v. Dubilier Condenser Corp:, 289 U. S. 178, 187, 53 S. Ct. 554, 557, 77 L. Ed. 1114, 85 A. L. R. 1488, as follows:

"The respective rights and obligations of employer and employee, touching an invention conceived by the latter, spring from the contract of employment.

"One employed to make an invention, who succeeds, during his term of service, in accomplishing that task, is bound to assign to his employer any patent obtained. The reason is that he has only produced that which he was employed to invent. His invention is the precise subject of the contract of employment. A term of the agreement necessarily is that what he is paid to produce belongs to his paymaster. Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033. On the other hand, if the employment be general, albeit it covers a field of labor and effort in the performance of which the employee conceived the invention for which he obtained a patent, the contract is not so broadly construed as to require an assignment of the patent. · Hapgood v. Hewitt, 119 U. S. 226, 7 S. Ct. 193, 30 L. Ed. 369; Dalzell v. Dueber Watch-Case Mfg. Co., 149 U. S. 315, 13 S. Ct. 886, 888, 37 L. Ed. 749. In the latter case it was said:

" 'But a manufacturing corporation which has employed a skilled workman, for a stated compensation, to take charge of its works, and to devote his time and services to devising and making improvements in articles there manufactured, is not entitled to a conveyance of patents obtained for inventions made by him while so employed, in the absence of express agreement to that effect.'

"The reluctance of courts to imply or infer an agreement by the employee to assign his patent is due to a recognition of the peculiar nature of the act of invention, which consists neither in finding out the laws of nature, nor in fruitful research as to the operation of natural laws, but in discovering how those laws may be utilized or applied for some beneficial purpose, by a process, a device, or a machine. It is the result of an inventive act, the birth of an idea and its reduction to practice; the product of original thought; a concept demonstrated to be true by practical application or embodiment in tangible form. Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 489, 11 S. Ct. 846, 35 L. Ed. 521; Symington Co. v. National Malleable Castings Co., 250 U. S. 383, 386, 39 S. Ct. 542, 63 L. Ed. 1045; Pyrenc Mfg. Co. v. Boyce (C. C. A.) 292 F. 480, 481.

"Though the mental concept is embodied or realized in a mechanism or a physical or chemical aggregate, the embodiment is not the invention and is not the subject of a patent. This distinction between the idea and its application in practice is the basis of the rule that employment merely to design or to construct or to devise methods of manufacture is not the same as employment to invent. Recognition of the nature of the act of invention also defines the limits of the so-called shop right, which, shortly stated, is that, where a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent, he must accord his master a nonexclusive right to practice the invention. McClurg v. Kingsland, 1 How. 202, 11 L. Ed. 102; Solomons v. United States, 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667; Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 S. Ct. 78, 37 L. Ed. 1049. This is an application of equitable principles. Since the servant uses his master's time, facilities, and materials to attain a concrete result, the latter is in equity entitled to use that which embodies his own property and to duplicate it as often as he may find occasion to employ similar appliances in his business. But the employer in such a case has no equity to demand a conveyance of the invention, which is the original conception of the employee alone, in which the employer had no part. This remains the property of him who conceived it, together with the right conferred by the patent, to exclude all others than the employer from the accruing benefits. These principles are settled as respects private employment."

See, also, Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033; Gill v. U. S., 160 U. S. 426, 16 S. Ct. 322, 40 L. Ed. 480; Solomons v. U. S., 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667; and Moffett v. Fiske, 60 App. D. C. 281, 51 F.(2d) 868.

In the case at bar appellant was employed by appellee for the express purpose of operating the new electric furnace and working out a method for making abrasive resistant metal, for which work he was paid by appellee. He cannot now deprive appellee of the fruits of his labor by setting up his patent later obtained on that process.

In view of our conclusion that the trial court properly dismissed appellant's complaint, it is unnecessary to discuss the other defenses interposed by appellee but not considered by the trial court.

Decree affirmed.