68 U.S. 340 (1863)
1 Wall. 340
BLOOMER
v.
MILLINGER.
Supreme Court of United States.

*345 Messrs. Seward, Norton, and Blatchford, for the appellant, Bloomer.
*348 Mr. Justice CLIFFORD, after stating the case, delivered the opinion of the court:
Counsel of the complainant concede that the machines *349 were constructed and put in operation by the consent and license of the assignees of the patentees, and that the respondent had the full right to continue to use and operate the same throughout the entire period of the extension granted by the Commissioner of Patents. But they deny that he had any right to continue to use or operate them under the second extension, which was granted by the act of Congress. All of those machines were constructed and put in operation before the act of Congress was passed, and of course under an authority founded upon the patent as it existed at the time the authority was conferred. Regarding the transaction in that point of view, the argument is, that the respondent could not lawfully continue to use and operate the machines under the extension granted by Congress, inasmuch as such a use of the invention was not in the contemplation of the parties when the respondent was authorized to construct them and put them in operation.
Two principal defences were set up by the respondent in the court below.
First, he insisted that inasmuch as he constructed the machines and put them in operation under the authority of the patentee or his assigns, with the right to continue to use and operate them during the entire term of the patent as it was then granted, he cannot now be deprived of the right to use the property which he was thus induced to purchase, and which he in that manner lawfully acquired.
Secondly, he insisted that the complainant, at the time the respondent transferred to him the right he acquired under the assignment to him of the 10th of April, 1846, agreed that he, the complainant, would execute to him, the respondent, a deed of assignment of the right to the extension in question, so far as respects the three machines now in controversy; and he insisted that parol proofs were admissible and sufficient to establish the fact of such an agreement. On the other hand, the complainant denies that any such agreement was ever made, and he also insists that parol proofs are not admissible to establish such a theory.
Confessedly, the latter question is one of difficulty, under *350 the circumstances, but it is wholly unnecessary to decide it in this case, as the respondent was and is clearly entitled to judgment upon the other ground. He constructed his machines, or caused them to be constructed, under the authority of the patentee or his assigns, and consequently must be regarded in the same light as a grantee or assignee under those who had the legal control of the patent. Builders of machines under such circumstances, have the same rights as grantees or assignees.
When the respondent had purchased the right to construct the machines and operate them during the lifetime of the patent as then existing, and had actually constructed the machines under such authority, and put them in operation, he had then acquired full dominion over the property of the machines, and an absolute and unrestricted right to use and operate them until they were worn out.
Patentees acquire the exclusive right to make and use, and vend to others to be used, their patented inventions for the period of time specified in the patent, but when they have made and vended to others to be used one or more of the things patented, to that extent they have parted with their exclusive right. They are entitled to but one royalty for a patented machine, and consequently when a patentee has himself constructed the machine and sold it, or authorized another to construct and sell it, or to construct and use and operate it, and the consideration has been paid to him for the right, he has then to that extent parted with his monopoly, and ceased to have any interest whatever in the machine so sold or so authorized to be constructed and operated. Where such circumstances appear, the owner of the machine, whether he built it or purchased it, if he has also acquired the right to use and operate it during the lifetime of the patent, may continue to use it until it is worn out, in spite of any and every extension subsequently obtained by the patentee or his assigns.
Provision is made by the eighteenth section of the act of the 4th of July, 1836, for the extension of patents beyond the time of their limitation. By the latter clause of that section *351 the benefit of such renewal is expressly extended to assignees and grantees, of the right to use the thing patented, to the extent of their respective interests therein. 5 Stat. at Large, 125. Under that provision it has repeatedly been held by this court that a party who had purchased and was using a patented machine, during the original term for which the patent was granted, had a right to continue to use the same during the extension. Wilson v. Rousseau, 4 How., 646. Founded as that rule is upon the distinction between the grant of the right to make and vend the machine, and the grant of the right to use it, the justice of the case will always be obvious, if that distinction is kept in view and the rule itself is properly applied.
Purchasers of the exclusive privilege of making or vending the patented machine in a specified place, hold a portion of the franchise which the patent confers, and of course the interest which they acquire terminates at the time limited for its continuance by the law which created it, unless it is expressly stipulated to the contrary. But the purchaser of the implement or machine, for the purpose of using it in the ordinary pursuits of life, stands on different ground. Such certainly were the views of this court in the case of Bloomer v. McQuewan, 14 How., 549, where the whole subject was very fully considered. Attention is drawn to the fact that there was considerable diversity of opinion among the judges in disposing of that case, but the circumstance is entitled to no weight in this case, because the court has since unanimously affirmed the same rule. Chaffee v. The Boston Belting Co., 22 How., 223. In the case last mentioned the court say, that when the patented machine rightfully passes from the patentee to the purchaser, or from any other person by him authorized to convey it, the machine is no longer within the limits of the monopoly. By a valid sale and purchase the patented machine becomes the private individual property of the purchaser, and is no longer specially protected by the laws of the United States, but by the laws of the State in which it is situated. Hence it is obvious, say the court, that if a person legally acquires a title to that which is the *352 subject of letters patent, he may continue to use it until it is worn out, or he may repair it or improve upon it as he pleases, in the same manner as if dealing with property of any other kind. Webbs. Pat. Cases, 413, note p.
Considering that the question has been several times decided by this court, we do not think it necessary to pursue the investigation. The decree of the Circuit Court is therefore
AFFIRMED WITH COSTS.