## DANIELS v. PERMUTIT CO.

No. 8010.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 9, 1942.

Decided Aug. 30, 1943.

As Amended on Denial of Rehearing
Oct. 13, 1943.

James H. Littlehales, of Washington, D. C. (Hugh M. Morris and Alexander L. Nichols, both of Wilmington, Del., and Alfred M. Houghton, of Washington, D. C., on the brief), for appellant.

Ira J. Wilson, of Chicago, Ill., for appellee.

Before MARIS and JONES, Circuit Judges, and AVIS, District Judge.

JONES, Circuit Judge.

This appeal grows out of a suit under R.S. § 4915, 35 U.S.C.A. § 63, for the issuance of a patent.

The alleged invention in controversy is a discoid lift-turn valve composed of plate-like rotor and stator members, each having a corresponding plurality of ports which are selectively brought into registry by the rotation of the movable member. Thereby the flow of different liquids through the

valve may be successively established. For the prevention of leakage from one port to a non-corresponding port while the valve is in operation, a disc-shaped resilient gasket is interposed between the rotor and stator members; and, in order to avoid injury to the gasket from the turning of the rotor, mechanical means are provided for lifting the rotor from its seat so as to separate it from the gasket before the rotor is turned to a desired new position. For the purpose of increasing the sealing of the ports, projecting seat portions of ringlike appearance are provided around each of the ports of the rotor so that when the rotor is seated by mechanical pressure the extended rings around its ports press tightly into or against the gasket which is attached to the face of the stator. The use of such valves is especially indicated in water softening machines, and the valves of both the plaintiff and the defendant have been commercialized for that purpose.

On June 25, 1931, one Thomas B. Clark (of whose rights herein the Permutit Company, the defendant, is the assignee) filed his application (Serial No. 546,694) for a patent of a discoid multi-ported lift-turn valve. Approximately two months later, viz., on August 31, 1931, the plaintiff Daniels filed his application (Serial No. 560,303) for a like invention. Interference between the two applications was thereupon declared by the Patent Office, and five counts, based on claims in the Clark and Daniels applications, were put in issue.

Count 1, which is sufficiently illustrative of count 2, is as follows: "1. In a plate type multiple port valve, comprising two members having multiple ports, a resilient gasket between them and secured to the stationary member, the movable member having rings around its ports adapted to press into the resilient gasket to seal off one port from another, and means compelling the movable member to be lifted off its seat before it can be moved to another position."

Count 3, upon which both counts 4 and 5 depend by specific reference, is as follows: "3. A valve comprising two cooperative members, a discoid rotor having a flat face with ports therein, and a stator having a flat face with ports therein, the rotor being adapted to rotate about its axis and also to move along its axis, the ports in the rotor being adapted to register with the ports in the stator face, openings adapted to receive conduits for different liquids and in communication with the stator ports, the stator and the rotor being adapted in suitable angular positions of the rotor to establish communication through the valve openings for controlling a plurality of different liquid flows, a detachable member on the stator forming a chamber enclosing the rotor, a discoid ported gasket of soft resilient material of the nature of soft rubber interposed between rotor and stator, means for putting the rotor under a yielding pressure tending to force the rotor, stator and gasket together to form a tight seal in all the valve positions but normally preventing the rotor from being rotated without injury to the gasket, actuating means adapted both for moving the rotor axially a short distance away from the stator and also for rotating the rotor while moved away from the stator, said actuating means being adapted in operation to counteract said pressure thus relieving pressure from the gasket to permit free rotation and to prevent injury to the gasket, but permitting pressure to be exerted upon the gasket in each of the valve positions to maintain the seal."

Counts 1 and 2 cover the rings, around the ports, which are designed to press into the resilient gasket so as to seal off one port from another, while count 3 (and, by the same token, counts 4 and 5) covers the means for the lifting and rotation of the movable member so as to prevent its injuring the gasket upon its being turned.

As a result of the interference proceeding (No. 70285), at which voluminous testimony and many exhibits were offered by the respective parties, the Examiner of Interferences held that Clark had established conception on September 8, 1930, of the subject matter of counts 3, 4 and 5 and a reduction thereof to practice in October 1930. He further held that Clark had not shown conception of the idea of the sealing rings around the rotor's ports, as embraced by counts 1 and 2, prior to June 1931 nor had he reduced the same to practice prior to the filing of his application on June 25, 1931. As a consequence, Clark was held to June 1931 for his invention of the subject matter of counts 1 and 2, which was subsequent to Daniels, the Examiner having also found that Daniels had conceived on April 11, 1931, the subject matter of all five counts in issue and had reduced the same to practice on May 1, 1931. Accord-

ingly the Examiner awarded priority of invention to Daniels as to counts 1 and 2 and to Clark as to counts 3, 4 and 5.

On cross appeals, the Board of Appeals in the Patent Office affirmed the Examiner's findings as to the time of Clark's conception and actual reduction to practice of the subject matter of counts 3, 4 and 5, but, because of certain testimony in the record thought by the Board of Appeals to be corroborative of Clark, the Board reversed the Examiner's finding as to counts 1 and 2 and held that Clark had also conceived the subject matter of those counts in October 1930 and that his diligence in seeing to the filing of an application for a patent constituted a constructive reduction thereof to practice. The Board of Appeals also affirmed the Examiner's findings as to the time of Daniels' conception and reduction to practice of the subject matter of all five counts. A patent embracing claims analogous to the five counts in issue was thereafter issued on the Clark application, and Daniels duly instituted the suit here involved.

In addition to the record made in the interference proceeding, both before the Examiner and before the Board of Appeals in the Patent Office, the parties at the trial in the court below offered additional evidence. On the strength of that evidence, the learned trial judge awarded priority of invention to Daniels as to all five counts in issue and directed that the Commissioner of Patents issue a patent to Daniels for corresponding claims. From that decree the defendant took the present appeal.

The award to Clark of priority of invention with respect to the matter covered by counts 3, 4 and 5, consequent upon the unanimous finding in the Patent Office of his prior conception and timely reduction thereof to practice, obviously rendered pertinent the rule in Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657, that " * * * where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction." The learned trial judge was of the opinion that the additional evidence offered by the plaintiff at trial met the requirements of the

rule in Morgan v. Daniels and justified the action taken by the court below as already indicated. We have then to consider whether that was so and, for that purpose shall treat first with the additional evidence as it relates to counts 3, 4 and 5 as to which there was unanimity of finding in the Patent Office.

Incidentally, no additional evidence was offered at trial to dispute the findings of the Examiner and the Board of Appeals that Clark conceived the subject matter of counts 3, 4 and 5 on September 8, 1930. Nor was any evidence offered to establish that the like conception by Daniels was any earlier than April 11, 1931, which, as already stated, was the date of conception accorded him by both the Examiner and the Board of Appeals. In fact, at trial, Daniels accepted the finding of the Patent Office in such regard. The priority of Clark's conception of the subject matter of counts 3, 4 and 5, therefore, stands unrefuted. It was with respect to the time Clark's reduction to practice of the matter embraced by those counts that the trial court's findings differed materially from those of the Patent Office.

In that connection, the Patent Office tribunals had found, and there is ample evidence in the record to support the findings, that in October 1930 a model of the Clark valve (Exhibit 62), whereof Clark had made a drawing (Exhibit 64) on September 8, 1930, was assembled and put on test; that it operated satisfactorily; and that it continued so to function when tested thereafter at various times. The facts supporting these findings appear from the oral testimony of witnesses and documentary or physical exhibits which the Patent Office tribunals had a right to, and did, accredit.

Whether Clark's valve (Exhibit 62) constituted a reduction to practice of the matter covered by counts 3, 4 and 5 turned, in the opinion of the court below, upon whether the gasket used in the valve was of "soft resilient material of the nature of soft rubber" as called for by count 3, to which counts 4 and 5 are tied by reference. From the evidence offered at trial, the court below found that the gasket employed in Exhibit 62 was of hard rubber and concluded therefore that Exhibit 62 did not constitute a reduction to practice of the subject matter of counts 3, 4 and 5. The evidence at trial as to the characteristics of the gasket used in Exhibit 62 came al-

most entirely from the plaintiff's expert witness O'Hare, the superintendent of the Voorhees Rubber Manufacturing Company, a manufacturer of gaskets of various kinds and in fact the manufacturer of the gasket used in Exhibit 62 (a Voorhees No. 15,-514).

The plaintiff himself also testified that he had performed experiments with a Voorhees No. 15,514 gasket on a standard valve constructed according to his own application and had found that the gasket did not seal the valve satisfactorily. The experiments were not performed on Exhibit 62. They were conducted ex parte and were uncorroborated by anyone who had assisted Daniels in his tests or had observed them. The valve which he used was not produced at trial. Furthermore, the leak which he says his experiments disclosed was around the rings of the rotor, which concededly Exhibit 62 did not have, as we shall see later when we come to consider counts 1 and 2. We think that the testimony of Daniels was legally inadequate both in character and in amount to convict the finders in the Patent Office of error in finding that the Clark valve (Exhibit 62) with its Voorhees gasket No. 15,514 performed satisfactorily upon test in October 1930.

O'Hare testified that the gasket used in Exhibit 62, which had been made prior to 1927, originally had a density of 83 on the scale of 100 on a Shore Durometer (an instrument for indicating relatively the density of rubber) and that at the time of its use in Exhibit 62 in October 1930 it probably had a density almost as great as it had acquired by the time of trial in January 1942, which was 95 on the Shore Durometer. O'Hare further testified that a Voorhees No. 15,514 gasket was designated as "medium hard" in the manufacturer's classification of gaskets and gave it as his opinion that a No. 15,514 Voorhees is not "a really soft rubber". But he also testified that "One person's idea of what a hard gasket is and what a soft gasket is, differs from another's—even as it does between rubber manufacturers"; and that the choice between a Voorhees "Special Soft" gasket and a No. 15,514 is determined by the pressure and temperature of the water which the gasket is intended to seal in; and, of course, the size of the valve has its bearing. In regard to the adaptability of a gasket for a particular use, O'Hare further observed that "common sense would be sufficient to tell a man he needed something softer, if he found he had a leak; at least he would try that as a next step."

■ In this case, however, the Patent Office found, and the finding has not been overcome by testimony, that Exhibit 62 operated satisfactorily when put to test in October 1930. Such being the case, and particularly in view of the relativity between a hard and a soft gasket as determined by the circumstances of their use, it seems to us that the finding of the Patent Office tribunals that the gasket requirement in counts 3, 4 and 5 was met by the gasket used in Exhibit 62, so far as a reduction to practice is concerned, was not competently overcome by the additional evidence. Moreover, it should be borne in mind, as the evidence discloses, that the Clark valve (Exhibit 62) was fabricated from materials on hand and not from materials specially designed to give the valve its highest degree of satisfactory performance. Cf. Downs v. Andrews, 58 App.D.C. 91, 25 F.2d 218, 224. Clark was not obliged to choose the most efficient gasket for demonstrating the workability of his idea. Smith v. Carter Carburetor Corporation, 3 Cir., 130 F.2d 555, 559.

■■ Under the relatively varying and non-definite specification as to the density of the gasket to be used, the Patent Office's finding of Clark's reduction to practice in October 1930 of the matter covered by counts 3, 4 and 5, was the type of administrative interpretation which, unless it be convincingly refuted by evidence, a court should accept in faith to the rule of Morgan v. Daniels. See Lorenz v. Colgate-Palmolive-Peet Co., 3 Cir., 122 F.2d 875, 877. In determining priority of invention, "it is just such questions that the administrative tribunal is pre-eminently qualified to solve." Gold v. Gold, 7 Cir., 237 F. 84, 86. We do not think that the additional evidence was sufficient to overcome the Patent Office finding of Clark's actual reduction to practice of the subject matter of counts 3, 4 and 5.

■ Nor do we think that Clark's file wrapper estoppel which the appellee urges is helpful in determining just how soft a gasket would have to be before it could qualify within the requirements of counts 3, 4 and 5. Unquestionably, the counts in issue limit the gasket to one of soft

resilient material in the nature of soft rubber. But neither the scope nor the validity of a patent containing those counts is before us. We are not called upon to express, and therefore purposely refrain from expressing, an opinion as to whether the ascertainment or discovery of the matter contained in any of the counts in issue amounted to invention.

■ But, even had Exhibit 62 never been constructed or tested, it is our opinion that the award of priority of invention to Clark with respect to counts 3, 4 and 5 stands unimpaired on the basis of his prior conception thereof and his constructive reduction to practice which the unrefuted findings of the Patent Office support. The Board of Appeals found that on March 19, 1931, Clark wrote a letter (Exhibit 77) to his superior suggesting that an application be filed for a patent of his valve which he described. On March 24, 1931, the superior responded to Clark by letter (Exhibit 78) directing him to address a letter to a patent attorney for the General Water Treatment Corporation in New York, "requesting him to apply for a patent on your [Clark's] lift turn valve described in your letter of March 19th." All of this was prior to April 11, 1931, the date of conception accorded Daniels (which he accepted at trial). The Board of Appeals found that Clark was diligent in regard to the filing of an application for a patent of his valve from a time antedating Daniels' date of conception down to the filing of the Clark application on June 25, 1931. None of these facts were controverted at trial, and we think the evidence justified the Board's conclusion as to Clark's diligence. Without regard therefore for the actual reduction to practice in October 1930 which the Patent Office found as to the matter covered by counts 3, 4 and 5, Clark's constructive reduction to practice of the matter covered by those counts clearly appears. See 2 Walker on Patents (Deller's Ed.1937) § 204, et seq. We conclude, therefore, that the trial court erred in not awarding priority of invention to Clark with respect to the subject matter of counts 3, 4 and 5.

■ Coming to counts 1 and 2 which embrace the rings around the rotor's ports, with respect to which the Examiner found that Clark failed to establish his conception of the subject matter thereof prior to June 1931, while the Board of Appeals found October 1930 as the time of his conception, a different situation prevails. Admittedly neither Clark's drawing of his valve (Exhibit 64) nor his model (Exhibit 12) disclosed rings around the rotor's ports. As the court below competently found,—"Clark never built a valve having rings around the ports of the rotor or made or had made, any drawings or written descriptions of such rings prior to the preparation of his application for patent." Furthermore, as the court below also correctly found, Clark's application as originally prepared disclosed the gasket as mounted on the rotor instead of on the stator as required by counts 1 and 2. Such an arrangement completely negatived any idea of sealing effect by the rings so far as their pressing into the gasket on the face of the stator was concerned. We have also examined the testimony of the witnesses which the Board of Appeals accepted as corroborating Clark's assertion that in October 1930 he had conceived recesses around the ports into which the gasket could be pressed. We find nothing in that testimony to suggest Clark's earlier conception of the rings as called for by counts 1 and 2. It is our opinion, therefore, that the evidence convincingly shows that Clark failed to establish conception of the subject matter of counts 1 and 2 at any time prior to the dates of Daniels' conception and reduction thereof to practice and that accordingly Daniels is entitled to an award of priority of invention as to counts 1 and 2.

The decree of the District Court is reversed and the case remanded for further proceedings in conformity with this opinion.