CONSOLIDATED VULTEE AIRCRAFT CORP. et al. v. MAURICE A. GARBELL, Inc. et al.

No. 12885.

United States Court of Appeals Ninth Circuit.

June 9, 1953.

Rehearing Denied July 13, 1953.

Robert B. Watts, San Diego, Cal., Fred Gerlach, Chicago, Ill., Harris, Kiech, Foster & Harris, Ford Harris, Jr., Los Angeles, Cal., for appellants.

Lyon & Lyon, Frederick W. Lyon, Los Angeles, Cal., Sullivan, Roche, Johnson & Farraher, Theodore Roche, Jr., San Francisco, Cal., for appellees.

Before MATHEWS, HEALY and BONE, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a judgment which, in an action by appellees, Maurice A. Garbell, Inc., and Garbell Research Foundation, against appellants, Consolidated Vultee Aircraft Corporation, hereafter called Consolidated, and American Airlines, Inc., hereafter called American, held that claims 1, 2, 3, 5, 6 and 12 of patent No. 2,441,758 were valid and infringed by appellants, enjoined further infringement thereof and ordered an accounting of profits and damages.

The patent was for an airplane wing called a fluid-foil lifting surface—an alleged invention of Maurice A. Garbell, hereafter called Garbell. From September 7, 1942, to October 15, 1945, Garbell was an employee of Consolidated. On September 7, 1942, and at all pertinent times thereafter, Consolidated was engaged in the business of manufacturing, using and selling airplanes and airplane wings of various types and designing, developing and perfecting new types of airplanes and airplane wings. On September 7, 1942, Consolidated and Garbell made and signed an agreement called an invention agreement, which provided:

"1. [Garbell] agrees:

"(a) To disclose promptly in writing to [Consolidated's] Patent Department or to such person as [Consolidated] may designate, all inventions and improvements heretofore or hereafter made, developed, perfected, devised or conceived by [Garbell] either solely or in collaboration with others during [Garbell's] employment by [Consolidated], whether or not during regular working hours, and including a period of one (1) year after termination of employment, relating to aircraft or parts and the manufacture thereof, or relating in any way to aviation or to the business, developments or products of [Consolidated]; and if so requested by [Consolidated], to assign, transfer and convey to [Consolidated] all right, title and interest in and to all such inventions and improvements; * * *

"2. [Consolidated], if it considers any invention or improvement reported by [Garbell] pursuant to paragraph 1 hereof to be of substantial value and patentable, will, after completing its investigation in regard thereto, award and pay to [Garbell] the sum of Ten Dollars ($10.00).

"3. [Consolidated], if it elects to acquire any invention or improvements referred to in paragraph 1 hereof, agrees:

"(a) To notify [Garbell] of its election so to do within nine months from the date of the complete disclosure of such invention or improvement to [Consolidated];

"(b) To pay all expenses in connection with the preparation and prosecution of patent applications in the United States of America and all foreign countries wherein [Consolidated] may desire to obtain patents;

"(c) To pay [Garbell] an additional award of Forty Dollars ($40.00) upon execution by [Garbell] of applications for United States letters patent upon such invention or improvement; together with an assignment thereof to [Consolidated]; * * *

"6. If [Consolidated] shall fail to elect in writing that it desires to prosecute a patent application on any invention or improvement specified in paragraph 1 hereof within nine months following disclosure thereof to [Consolidated], then all rights of [Consolidated] in and to such invention or improvement shall revert to [Garbell]

with the exception only that [Consolidated] shall have a free shop right with respect thereto.[1]

"7. Neither this agreement nor any benefits hereunder are assignable by [Garbell], but the terms and provisions hereof shall inure to the benefit of [Consolidated's] successors and assigns."

During his employment by Consolidated, Garbell disclosed his alleged invention to Consolidated. Consolidated made an investigation in regard to Garbell's alleged invention, but did not consider it to be of substantial value and patentable. Therefore Consolidated did not request Garbell to make the assignment, transfer and conveyance mentioned in paragraph 1(a) of the invention agreement or the assignment mentioned in paragraph 3(c); did not award or pay to Garbell the $10 mentioned in paragraph 2 or the $40 mentioned in paragraph 3(c); and did not, within nine months or at all, make the election mentioned in paragraphs 3 and 6 or give the notice mentioned in paragraph 3(a) or pay the expenses mentioned in paragraph 3(b). Thus Consolidated waived whatever right it may have had to acquire Garbell's alleged invention or a patent therefor, but did not waive the shop right mentioned in paragraph 6.

A patent for Garbell's alleged invention was applied for by him on July 16, 1946—less than a year after the termination of his employment. Garbell's rights under that application were assigned by him to Maurice A. Garbell, Inc., on April 16, 1948. On that application, the patent in suit (No. 2,441,758) was issued on May 18, 1948. A three-fourths interest in the patent was assigned by Maurice A. Garbell, Inc., to Garbell Research Foundation on September 15, 1949.

After May 18, 1948, Consolidated manufactured, used and sold, and American used, airplanes of a type called Convair Liner Consolidated Vultee Model 240. For brevity's sake, airplanes of that type are hereafter called Convair airplanes. All Convair airplanes used or sold by Consolidated were manufactured by Consolidated. All Convair airplanes used by American were sold to American by Consolidated.

On January 18, 1950, appellees commenced this action, alleging that appellants (Consolidated and American) had infringed and were infringing the patent "by making, selling or using fluid-foil lifting surfaces [airplane wings] embodying the patented invention." Appellants answered on February 23, 1950, and amended their answer on April 17, 1950. Thereafter a trial was had, an opinion was filed,[2] findings of fact and conclusions of law were stated and on January 15, 1951, the judgment was entered.[3] A motion for a new trial was filed by appellants on January 25, 1951, and was denied on February 12, 1951. The appeal followed.

Several defenses were pleaded by appellants. One was that Consolidated had a shop right with respect to Garbell's alleged invention.[4] Under the invention agreement, Consolidated had such a shop right if Garbell made, developed, perfected, devised or conceived his alleged invention during his employment by Consolidated. However, the District Court made findings to the effect that Garbell did not make,

1. Meaning a non-exclusive right to practice any such invention or improvement. See United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 77 L. Ed. 1114; Gate-Way v. Hillgren, D.C. S.D.Cal., 82 F.Supp. 546, affirmed in Gate-Way v. Hillgren, 9 Cir., 181 F.2d 1010.

2. Maurice A. Garbell, Inc. v. Consolidated Vultee Aircraft Corp., D.C.S.D.Cal., 94 F.Supp. 843.

3. The District Court held that appellants had infringed and were infringing claims 1, 2, 3, 5, 6 and 12 of the patent—Consolidated by manufacturing, using and selling, and American by using, Convair airplanes. The District Court did not hold, nor do appellees here contend, that there was any other infringement.

4. Other defenses pleaded by appellants were that the patent was invalid, and that, if valid, it was not infringed by either of them. It was and is contended by appellants that Garbell's alleged invention was not embodied in any Convair airplane, and that therefore, even

develop, perfect, devise or conceive his alleged invention during his employment by Consolidated, but made, developed, perfected, devised and conceived it prior to that employment.

The findings that Garbell did not make, develop or perfect his alleged invention during his employment by Consolidated, but made, developed and perfected it prior to that employment, were not supported by evidence and were clearly erroneous. The evidence showed that, if Garbell ever made, developed or perfected his alleged invention, he did so during his employment by Consolidated.

The findings that Garbell did not devise or conceive his alleged invention during his employment by Consolidated, but devised and conceived it prior to that employment, were supported by evidence [5] and were not clearly erroneous. We therefore accept them as correct.[6]

■ The District Court, in effect, held that Garbell made, developed and perfected his alleged invention when he devised and conceived it. We do not agree. An invention is not made, developed or perfected until reduced to practice.[7] There was no evidence that Garbell reduced his alleged invention to practice prior to his employment by Consolidated. Instead, the evidence showed that, if he ever reduced it to practice, he did so during that employment.

The District Court made findings to the effect that Consolidated "rejected" Garbell's alleged invention—meaning, we suppose, that Consolidated waived whatever right it may have had to acquire Garbell's alleged invention or a patent therefor. That waiver has no significance here; for appellants claimed and are here claiming, not that Consolidated acquired Garbell's alleged invention or a patent therefor,[8] but that Consolidated acquired a shop right with respect thereto. The District Court did not find, nor did the evidence warrant a finding, that Consolidated ever "rejected" or waived that shop right.

■ The evidence showed that, if Garbell ever made, developed or perfected his alleged invention, he did so by and through the use of materials and facilities of Consolidated and time for which he was paid by Consolidated. Therefore, irrespective of the invention agreement, Consolidated had a shop right with respect to his alleged invention.[9]

We conclude that, under and by virtue of its shop right, Consolidated was entitled to manufacture, use and sell airplanes embodying Garbell's alleged invention,[10] and that purchasers of such airplanes so manufactured and sold by Consolidated were entitled to use them.[11]

if the patent was valid, and even if Consolidated had no shop right, there was no infringement by appellants or either of them.

5. The only evidence supporting these findings was the testimony of Garbell himself.

6. See Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

7. Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; United States v. Dubilier Condenser Corp., supra; Hann v. Venetian Blind Corp., 9 Cir., 111 F.2d 455. See, also, Coffin v. Ogden, 18 Wall. 120, 21 L.Ed. 821; Clark Thread Co. v. Willimantic Linen Co., 140 U.S. 481, 11 S. Ct. 846, 35 L.Ed. 521; T. H. Symington Co. v. National Malleable Castings

Co., 250 U.S. 383, 39 S.Ct. 542, 63 L.Ed. 1045.

8. Cf. Standard Parts Co. v. Peck, 264 U.S. 52, 44 S.Ct. 239, 68 L.Ed. 560; Goodyear Tire & Rubber Co. v. Miller, 9 Cir., 22 F.2d 353.

9. See cases cited in footnote 1. See, also, McClurg v. Kingsland, Lightner & Cuddy, 1 How. 202, 11 L.Ed. 102; Solomons v. United States, 137 U.S. 342, 11 S. Ct. 88, 34 L.Ed. 667; Lane & Bodley Co. v. Locke, 150 U.S. 193, 14 S.Ct. 78, 37 L.Ed. 1049; Gill v. United States, 160 U.S. 426, 16 S.Ct. 322, 40 L.Ed. 480; Barton v. Nevada Consolidated Copper Co., 9 Cir., 71 F.2d 381.

10. See cases cited in footnotes 1 and 9.

11. United States v. Masonite Corp., 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461;

In view of the conclusions stated above, we need not and do not consider the other defenses [12] pleaded by appellants.

Judgment reversed.

See, also, Bloomer v. Millinger, 1 Wall. 340, 17 L.Ed. 581; Bloomer v. McQuewan, 14 Wall. 539, 14 L.Ed. 532; Adams v. Burke, 17 Wall. 453, 21 L.Ed. 700.

