**Samuel S. CHEITEN and The Water Master Company, a partnership,**

v.

**HANCOCK–GROSS, INCORPORATED.**

**Civ. A. No. 35213.**

United States District Court
E. D. Pennsylvania.

Oct. 13, 1964.

J. Walter Schilpp of Paul & Paul, Philadelphia, Pa., Charles W. Bradley, Jr., Chicago, Ill., of Fidler, Bradley & Patnaude, Chicago, Ill., of counsel, for plaintiffs.

Thomas M. Ferrill, Jr., Philadelphia, Pa., Karl L. Spivak, Philadelphia, Pa., of counsel, for defendant.

JOSEPH S. LORD III, District Judge.

Samuel S. Cheiten and The Water Master Company have brought this action for patent infringement against Hancock-Gross, Inc. The plaintiffs claim that the defendant is manufacturing and selling force cups which embody the invention covered by plaintiffs' Patent No. 2,844,826 issued July 29, 1958.

The defendant moves for summary judgment pursuant to Rule 56(b) of the F.R.Civ.P. on the ground that the Cheiten Patent No. 2,844,826 (Cheiten Patent) is not infringed by defendant's force cups. Defendant does not here attack the validity of plaintiffs' patent.

Three problems are raised by defendant's argument that its product is no infringement upon the Cheiten Patent:

1. Construction of the plain meaning of the wording in the Cheiten claim.

6. Cf. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944).

2. Applicability of file wrapper estoppel doctrine.

3. Effect of prior art in application of the doctrine of equivalents.

The Cheiten Patent covers a device, commonly known as a drain cleaner or plunger, used to apply a force to an obstructed fluid flow line and thereby remove obstructions therefrom. The device is particularly suited for clearing a clogged toilet because it embodies a tapered tail, or guide member, which extends from the inner surface of the bell-shaped force cup. The guide member is designed to slip into the opening at the base of the toilet, thereby guiding the surrounding lip at the bottom of the bell-shaped portion into position against the surface surrounding the opening, locking the plunger in position at the base of the toilet bowl.

S. S. Cheiten
Pressure Device
Filed Aug. 3, 1954
U. S. Patent No. 2,844,826

Hancock–Gross
Force Cup

The defendant's product incorporates the same tapered tail which meets the bell-shaped portion of the cup at its end. While the specifications in the Cheiten Patent describe, and the plaintiffs' product contains, a tapered tail that joins the inner wall of the bell-shaped body portion at about one-half inch above the end of the bell, the plaintiffs argue that the patent claim does not call for this spacing and that the scope of the patent is not limited to the specification that "the guide portion is connected to the inner wall of the bell portion with the area of connection spaced a sufficient distance, for example one-half to three-quarters of an inch, from the lip so that the lip remains flexible."

*Construction of the plain meaning of the wording in the Cheiten claim*

We do not agree with the plaintiffs' reading of the Cheiten Patent claim, i. e., that the claim does not call for the attachment of the guide member *spaced* inwardly from the open end of the bell-shaped member.

A comparison of rejected claim number 15 of the Cheiten Patent application with that of the final claim of the Cheiten Patent leads us to conclude that the Cheiten Patent claim specifies—using other words that the guide portion of the plunger be connected to the inner part of the bell-shaped member *some distance above* the open end of the bell-shaped member.

| REJECTED CLAIM 15 OF CHEITEN PATENT APPLICATION | CHEITEN PATENT CLAIM |
|---|---|
| A pressure device comprising a flexible bell-shaped generally hemispherical portion having a large open end, a flexible peripheral lip bounding said large open end of said bell-shaped portion | A pressure device comprising a flexible bell-shaped generally hemispherical member terminating in a plane forming a large open end at substantially its maximum diameter |
| and a hollow tubular flexible guide member having a large open end and a small open end, said large open end of said guide member being secured to the inner wall of said bell-shaped portion adjacent to the large open end thereof | and a hollow substantially tubular flexible guide member having a large end and a small end, said large end of said guide member being secured to the inner wall of said bell-shaped member inwardly of the large open end thereof |
| said guide member extending from said bell-shaped portion from its area of attachment thereto where it terminates in its small open end, said guide member thus being adapted to be inserted into a conduit. | said guide member extending from its area of attachment to said bell-shaped member outwardly beyond the plane of said large open end of said bell-shaped member and terminating in said small end |
| | the portion of the bell-shaped member at said large open end set off by the attachment of said guide member defining a lip, said guide member thus being adapted to be inserted into a conduit and said lip being adapted to prevent the backsplash of water during operation. |

◆

The rejected claim described a "guide member being secured to the inner wall of said bell-shaped portion *adjacent* to the large open end thereof," while the accepted claim read "said guide member being secured to the inner wall of said bell-shaped member *inwardly* of the large open end thereof." (Emphasis added). In this context we do not read the word "inwardly" to repeat that the guide portion is connected to the inner wall or to have any meaning other than "upwardly." Further, the accepted claim included several phrases describing a lip formed by the overlap of the bell beyond the point on the perimeter of the bell at which the guide portion originated. These phrases are absent from Claim 15.

### Applicability of file wrapper estoppel doctrine

Despite this reading of the claim, plaintiffs are entitled to the benefits of the doctrine of equivalents in a determination of the scope of their patent. In Royal Typewriter Co. v. Remington Rand, 168 F.2d 691 (C.A. 2, 1948), Judge Learned Hand said, at page 692:

> " * * * a patent is like any other legal instrument; but it is peculiar in this, that after all aids to interpretation have been exhausted, and the scope of the claims has been enlarged as far as the words can be stretched, on proper occasions courts make them cover more than their meaning will bear. If they applied the law with inexorable rigidity, they would never do this, but would remit the patentee to his remedy of re-issue, and that is exactly what they frequently do. Not always, however, for at times they resort to the 'doctrine of equivalents' to temper unsparing logic and prevent

an infringer from stealing the benefit of the invention. * * * "

■ Defendant argues that the doctrine of file wrapper estoppel precludes an extension of the Cheiten Patent's claim to cover the defendant's product. This doctrine prevents resort to the doctrine of equivalents to interpret the allowed patent claim so broadly as to cover a claim which was rejected on the prior art by the examiner, when limitations were introduced into the allowed claim in order to avoid prior art. See, e. g., Smith v. Magic City Kennel Club, 282 U.S. 784, 789–790, 51 S.Ct. 291, 75 L.Ed. 707 (1930); Tampax, Inc. v. Personal Products Corp., 123 F.2d 722 (C.A. 2, 1941), cert. den. 316 U.S. 665, 62 S.Ct. 946, 86 L.Ed. 1741 (1942).

File wrapper estoppel is clearly inapplicable to plaintiffs' claim. Both of the patents cited by the examiner in rejecting Claim 15 had inner members connected to the outer members at some significant distance from the lower edge of the outer members. Therefore, the inclusion of the element of connecting the guide member above the bottom of the bell in the Cheiten claim was not an attempt to avoid the prior art and plaintiffs are not estopped from invoking the doctrine of equivalents.

*Effect of prior art in application of the doctrine of equivalents*

Defendant further argues that in view of the prior art, the doctrine of equivalents cannot be extended to cover means which have clear antecedents in prior art. See International Harvester Co. v. Killefer Mfg. Co., 67 F.2d 54, 61 (C.A. 9, 1933). In Westro, Inc. v. Illinois Watch Case Co., 98 U.S.P.Q. 354, the court said, at page 359:

"* * * In applying the doctrine of equivalents, we are advised by Judge Learned Hand in the Royal Typewriter case, * * * that we should first interpret the claims (of the patent alleged to have been infringed) in the light of the disclosures of the patent, and then interpret both the claims and the disclosures in the setting of the prior art. * * * "

Defendant supplements its motion with a copy of U. S. Patent No. 1,804,874 issued May 12, 1931, to M. Hribar. This patent describes a bell-shaped force cup with a nipple adapted to be flexed outwardly when the cup is used for clearing pipes into which it will project.

A drawing accompanying the patent shows the Hribar device used in a toilet. It resembles the defendant's product.

M. Hribar
Drain Cleaner
Filed Sept. 28, 1929
U. S. Patent No. 1,804,874

 

Ostensibly the Hribar *claim* resembles the defendant's product. The defendant argues that the Cheiten claim must be narrowly construed in order to avoid the prior art of Hribar. Doing this, says the defendant, the Cheiten Patent could not be read without the limitation of the guiding member being connected to the inner wall of the bell-shaped member upwardly of the open end.

 If the defendant's interpretation of the Hribar patent were undisputed we would grant the motion. However, plaintiffs argue that the drawing on the Hribar patent is misleading, and that actually the Hribar device is *ball-shaped* with the lower end flexible enough to enable it to be inserted into a narrow canal and conform to the shape of that canal.[1] The plaintiffs have submitted an affidavit of James P. Goldsmith adopting this reading of the Hribar patent. This question of the teaching of the Hribar claim, specification and drawing is clearly in dispute, and is troubling enough to require the opportunity for the presentation of expert testimony on this subject. See Bowers v. E. J. Rose Mfg. Co., 149 F.2d 612, 615–616 (C.A. 9, 1945). Cf. Wisconsin Alumni R. Foundation v. George A. Breon & Co., 85 F.2d 166, 171 (C.A. 8, 1936); Haniffen v. Godshalk Co., 84 F. 649, 652–653 (C.A. 3, 1898).

An expert witness may be able to provide the court with enlightened information so that a more informed judgment can be made as to whether the information in the Hribar patent is sufficient to enable any person skilled in the art to produce defendant's product. The parties might also deem it advisable to introduce other testimony bearing upon the prior art. Cf. Glendenning v. Mack, 159 F.Supp. 665, 668–669 (D.Minn., 1958). For as we view this problem of infringement, whether or not the prior art is an anticipation of the defendant's product is indirectly determinative of the ultimate question of infringement

by the defendant. The meaning of the Cheiten Patent is limited by the effect of Hribar and other prior art. The question of infringement cannot be decided in this case on a motion for summary judgment.

 Furthermore, it is better practice to inquire fully into the validity of the patent before ruling on infringement. Sinclair & Carrol Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1944). Cf. Royal Typewriter Co. v. Remington Rand, 168 F.2d 691–692 (C.A. 2, 1948). Summary judgment would foreclose this preferred procedure.

For the foregoing reasons, defendant's motion for summary judgment will be denied.

---

1. The plaintiffs also argue that the Hribar patent device uses water as a force while the Cheiten Patent device requires pushing and pulling by the operator. This ar-gument has no merit. The Cheiten Patent file references show that either or both methods of asserting a force might be used with a given device.