**SEALECTRO CORPORATION, Plaintiff,**

**v.**

**L. V. C. INDUSTRIES, INC., Defendant.**

**No. 65–C–992.**

United States District Court
E. D. New York.

May 1, 1967.

---

Gordon, Brady, Caffrey & Keller, New York City, Roland T. Bryan, Stamford, Conn., for plaintiff.

William Anthony Drucker, New York City, for defendant.

### Decision and Order

ROSLING, District Judge.

Motion by defendant L. V. C. Industries, Inc. ["LVC"] pursuant to Fed.R. Civ.P. 56 for summary judgment declaring United States Patent 3,145,329 ["–329"] issued to plaintiff Sealectro Corporation ["Sealectro"] invalid is denied.

The complaint charges defendant with infringement of –329. Defendant's denial of infringement and its averments of invalidity on various grounds other than the one immediately to be discussed do not enter into this determination. The pivotal issue is found in LVC's contention that –329, apart from all other invalidating circumstances, was rendered invalid by reason of the alleged fact that "plaintiff filed a corresponding application prior to six months after filing a patent application in the United States for an invention made in the United States without applying for and obtaining from the Commissioner of Patents a license to file a foreign patent application as required by 35 U.S.C. 184 and 185."

■ The sections of the Patent Law cited which are set out in the appended footnote[1] are found in Chapter 17 entitled "Secrecy of Certain Inventions and Filing Applications in Foreign Country." The referent provisions were enacted shortly after the close of the Second World War, and were with their companion provisions intended to prevent disclosure of information which through premature publication might adversely affect the welfare of the country.

Plaintiff in its opposition to the motion contends that section 184 does not apply to its invention inasmuch as it was not "made" in the United States. Not only does the section itself in its opening sentence limit its applicability to "an invention made in this country," but the "Regulations Relating to Secrecy of Certain Inventions and Licenses to File Applications in Foreign Countries" are unambiguous in that regard. 37 C.F.R. § 5.11 declares in pertinent part that "[w]hen there is no secrecy order in effect"—[and there was none]—a license under 35 U.S.C. 184 is not required if

"(1) The invention was not made in the United States."

The relevant chronological and geographical facts other than the answer to the critical question as to where the invention was "made"—i. e. whether in the United States or in a foreign country—are not in dispute. An answer to the residual question, however, can be supplied only when the mixed question of law and fact has been resolved upon a trial.

The foreign patent was of British record. It was applied for by the inventors in England on February 2, 1960; complete specification was filed on February 1, 1961, and issuance as a British Patent No. 944,657 followed.

Application for the United States patent here in suit was filed on February 1, 1961, and the patent issued as –329 on August 18, 1964.

The identical invention is covered by both British and domestic patents.

It is thus seen that the British filing not only was prior to the expiration of six months after the United States filing, but in fact preceded such domestic filing by a year.

■ It does not appear that the invention, a "diode receptacle for holding a semiconductor rectifier," dispensing with the necessity for soldering connections or melting the solder for removal of the diode, procedures which endanger the device, falls within the restrictions of § 181 against patenting whereby secrecy is maintained in the interest of national security. Hence § 184 licensing for foreign patenting, if applied for, would have presented no problem. Retroactive licensing, moreover, is even now a possibility under the same provision should plaintiff elect to proceed in such fashion. Plaintiff, which admittedly did not apply for a license prior to the British filing,

1. "§ 184. Filing of application in foreign country

"Except when authorized by a license obtained from the Commissioner a person shall not file or cause or authorize to be filed in any foreign country prior to six months after filing in the United States an application for patent * * * in respect of an invention made in this country. A license shall not be granted with respect to an invention subject to an order issued by the Commissioner pursuant to section 181 of this title without the concurrence of the head of the departments and the chief officers of the agencies who caused the order to be issued. The license may be granted retroactively where an application has been inadvertently filed abroad and the appli-

cation does not disclose an invention within the scope of section 181 of this title. * * * *"

"§ 185. Patent barred for filing without license

"Notwithstanding any other provisions of law any person, and his successors, assigns, or legal representatives, shall not receive a United States patent for an invention if that person, or his successors, assigns, or legal representatives shall, without procuring the license prescribed in section 184 of this title, have made, or consented to or assisted another's making, application in a foreign country for a patent * * *. A United States patent issued to such person, his successors, assigns, or legal representatives shall be invalid."

has declared in answer to interrogatories propounded to it by defendant that it does not propose to seek such retroactive grant of a license.[2] Plaintiff's attitude is unqualifiedly that the patent was in a § 184 sense "made" in Great Britain, and hence required no United States licensing for validity of the domestic patent.

The patents name as the inventors Stanley Thomas Deakin, a British subject resident in England, and Albert E. Powell, a citizen of the United States resident in the State of New York.

Plaintiff has filed an affidavit[3] of Deakin, the British half of the team, reciting the following:

Deakin and plaintiff Sealectro are patentees of the British Patent, application for which was filed February 2, 1960. Deakin and Powell are the patentees of the corresponding United States Patent, for which application was originally filed February 1, 1961. Powell was at the time of the "making" of the invention vice-president in charge of engineering of plaintiff and simultaneously Deakin's "policy supervisor."

The affidavit continues:

"4. At the time of the making of the invention, the plaintiff was operating in the United Kingdom as a branch of the American company with said Powell as vice president in charge of engineering of the company, devoting a portion of the time to supervising the engineering activities in the United Kingdom;

"5. In the course of my engineering activity for the British branch of the plaintiff, I communicated to said Powell the fact that I had conceived the idea of combining an electrical component, such as a diode with a two-contact jack plug;

"6. That said Powell and myself had correspondence concerning the details of the design of such plug and the device into which such a plug would be fitted, all as a normal part of the operation of the British business of the plaintiff;

"7. The decision to incorporate some of the detailed design information that was contained in said Powell's memorandum of March 22, 1960, into the 'Complete Specification' that was necessary to be filed under British law, was made to illustrate the scope of the invention that was described by words in the Provisional Specification that was filed February 2, 1960, in the United Kingdom;

"8. The first reduction to practice of the invention by the making of models and the production of plugs was first done in the United Kingdom;

"9. The engineering content of the aforesaid Complete Specification, filed in Great Britain, and the essentially duplicate disclosure contained in the patent in suit were the joint efforts of said Powell and myself."

Powell's memorandum of March 22, 1960, plaintiff's "enclosure 6," referred to in paragraph 7 of Deakin's affidavit, is assigned a key role by defendant in the maintenance of the thesis that the invention, at least in part, was "made" in the United States.[4]

2. Retroactive licensing and validation of the patent are recognized as permissible procedures in Minnesota Mining & Manufacturing Co. v. Norton, 366 F.2d 238 (6th Cir. 1966); Ross v. McQuay, Inc., 257 F.Supp. 14 (D.Minn.1966); Barr Rubber Products Co. v. Sun Rubber Co., 253 F.Supp. 12, 20 (S.D.N.Y.1966); Davidson Rubber Co. v. Sheller Manufacturing Corp., 248 F.Supp. 842 (S.D.Iowa 1965).

3. Unconformed copy of the affidavit, the original being in transit from England at the time of the argument of the motion,

has been filed by plaintiff. Endorsed thereon is concession by movant that the facts as stated therein are not contested by the defendant.

4. It is plaintiff's contention (memorandum in opposition, p. 3) that

"Powell, in his supervisory capacity over the British branch of the plaintiff company, corresponded with the British engineer Deakin and suggested details to 'flesh out' the concept as he saw it, this as part of their management study necessary to their marketing of the product."

In "Fact No. 1" of its "Statement of Facts," the statement appears that "the attached copy of plaintiff's 'Enclosure 6', referred to in the attached copy of plaintiff's answer to defendant's interrogatory Number 17 as the 'Powell memorandum', shows that the *embodiment** of Figure 2 of United States Patent No. 3,145,329 was made by Powell in the United States."

Defendant has not submitted as part of its moving papers the interrogatories it propounded, nor a copy of all the answers elicited thereby from the plaintiff. Lacking, too, is any clear reference by either party in any paper filed herein indicating that it was the intent of a party that the Court was to consider as Rule 56 material anything beyond the fragmentary and ambiguous excerpts from plaintiff's responses to the interrogatories.

At all events, answer 16, which *is* before the Court, is precise in its averment that it was the *conception* of the embodiment and not the *embodiment itself* of Figure 2 which was made in the United States, whereas the "structural details of the embodiment as shown in Figures 1, 2 and 4 of Patent No. 3,145,329 appear to have been the result of the joint endeavors of Messrs. Deakin and Powell and their attorneys, both in the United States and in Great Britain."

Answer 17 to which movant points and copy of which it similarly annexes furnishes no greater support than 16 for its assertion that the answer establishes that the embodiment of Figure 2 was made in the United States. Such answer reads:

"17. As to claims 1, 2, 3 and 5, plaintiff adopts its answer No. 2 from its previous answers to interrogatory No. 2 of defendant and adds thereto that the initial work was done by S. T. Deakin in Great Britain and the Powell memorandum was prepared in the United States. A. E. Powell was vice president of Sealectro Corporation in charge of engineering and as such it is believed that he was aware of the developments that were being carried out in Great Britain and in the United States. Plaintiff, as presently advised, is aware of Messrs. Deakin and Powell being together in the same country only once and that was during the middle of October 1960 in the United States."

The significance of the reference to "answer No. 2." is unclear inasmuch as such answer is not reproduced in the papers before the Court.[5]

Enclosure 6, the third and last of the items, submitted by defendant in support of its Fact No. 1, does not, whether in or out of the context of answer 17, sustain defendant's averment "that the embodiment of Figure 2 * * * was made by Powell in the United States" nor, a fortiori, that the *invention* was "made" in the United States.

Plaintiff's position as declared in its answer 16, is that the "answer to the

---

* All italics supplied for emphasis.

5. If the Court were to disregard the limiting schedule of "attachments" which defendant submits "in support of Fact No. 1," a schedule which specifies only plaintiff's answers 16 and 17 and its "Enclosure 6" as support for the "Fact," and were to assume that answer 2 was incorporated by reference thereto in answer 17, thus bringing such answer within the ambit of matters considered by the Court, not too much of benefit would enure to defendant. Defendant's Interrogatory 2 and plaintiff's response read as follows:
    "With respect to each claim of Deakin et al. patent 3,145,329 asserted against defendant, state the date, place and circumstances of the alleged invention of the subject matter thereof and identify all written records thereof."
    "As to claims 1, 2, 3 and 5 of the U.S. Patent No. 3,145,329, the initial work on the invention took place in the latter part of October 1959 and extended over a period of about one month, such work being evidenced by five (5) sketches of S. T. Deakin, one being dated '26-10-59', another being dated '16-11', another being dated '27-10', another dated '25-10' and one undated, plus a further one page memorandum dated March 28, 1960, of A. E. Powell, with an attached single page sketch."

question as to the place of the invention requires a legal conclusion." With greater propriety it may well here be categorized as a mixed question of law and fact. The denial of the motion for summary judgment serves to narrow the scope of a brief on the law to what will ultimately on trial be found by the Court to be the facts with respect to the competing geography wherein the activities of the inventors were performed. It would, therefore, needlessly prolong this opinion were the Court before the facts are distilled from the evidence to undertake a complete exposition of legal precedent, much of it merely tangential or analogous, and none squarely on point.

Hence it will suffice for our immediate purpose to limit this discussion to a presentation of several textual comments drawn from Deller's Walker on Patents, 2d Ed. and to supply references to a number of pertinent decisions, some of which are not included in the annotations provided by that admirable work.[6] Volume 1, § 46, p. 199, expresses the basic rule:

"Every invention contains two elements,—a mental element and a physical one. An idea conceived by the inventor is the mental element and the application of that idea to the production of a practical result is the physical element. In order to constitute an 'invention' in the sense in which that word is employed in the Patent Act, an inventor must have proceeded so far as to have reduced his idea to practice and to have embodied it in some distinct physical form."

Conception, dealt with at some length, id. p. 191,

"involves the complete performance of the mental part of the inventive act. All that remains to be accomplished in order to perfect the inventive act is to convert the mental idea to reality (i. e., reduce the idea to practice.)"

The date of conception, thus defined, is of significance not in determining when an invention is "made" in the § 184 sense, but rather (id. 200) when as between *rival* inventors the question is as to who is to be "considered the first inventor, notwithstanding the invention was first reduced to practice by another" is subjud. Moreover, (id. p. 167)

"[w]hile the first and original inventor, generally speaking, is *prima facie* the one who first reduces an invention to practice, i. e., reduces his invention to a fixed, positive and practical form, the one who first conceives an invention and proceeds to perfect and adapt it with reasonable diligence may date back his invention to the date of conception and succeed as to priority over a second inventor who has, in fact, first perfected and actually reduced his invention to practice in a positive form."

The cases to which the Court now turns do not dissipate the uncertainty with which the Congress in its imprecise choice of terms infected the licensing provision and clouded its intent. The illumination the judicial dicta cast, though fitful, may, nevertheless, serve to adumbrate the area within which ambiguity must be resolved. Thus in Clark Thread Co. v. Willimantic Linen Co., 140 U.S. 481, 11 S.Ct. 846, 35 L.Ed. 521 (1891) we find the Court (p. 485, 11 S.Ct. p. 848) quoting from the answer of the defendants in that case "that they are informed and believe that said Weild *made the invention* for which said patents were issued to him," etc., and then supplying its own definition (p. 489, 11 S.Ct. p. 849) that "[a] conception of the mind is not an invention until represented in some physical form. * * *"

In T. H. Symington Co. v. National Malleable Castings Co., 250 U.S. 383, 39

**6.** Defendant's memorandum proclaims without directing the Court to the precedential source from which it derives the principle it sponsors that an "invention is 'made' when and where conceived." The Court's own research persuades it that the governing rule is not susceptible of so simplistic a definition.

S.Ct. 542, 63 L.Ed. 1045 (1919) the Court, quoting Deering v. Winona Harvester Works, 155 U.S. 286, 300, 15 S.Ct. 118, 39 L.Ed. 153 and through it reaching *Clark Thread Co.* as its primary source, carries the principle forward for 28 years in affirmation of its continuing vitality. United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 77 L. Ed. 1114 (1933), illustrating a variant of the principle, seems to stress conception rather than reduction to practice as comprising the invention. The disparate Dubilier holding may be accounted for by the uniqueness of the underlying controversy. The government as employer of the inventors sought to compel an assignment of the patent to itself as an obligation of their service. It was awarded, however, only a nonexclusive shopright. The inventors had during the course of their employment in the radio section of the Bureau of Standards conceived the invention. Their work for the Bureau was research and testing in the laboratory, and it was with the use of the government's tools and materials and while performing their regular tasks that the inventors worked on their invention. They brought their discoveries to the attention of their chief who permitted them "to pursue their work in the laboratory and to perfect the devices embodying their inventions."

An invention, the Court declared (289 U.S. p. 188, 53 S.Ct. p. 557) "is the result of an inventive act, the birth of an idea and its reduction to practice; the product of original thought; a concept demonstrated to be true by practical application or embodiment in tangible form," citing Clark Thread Co. and Symington Co., supra, as well as Pyrene Mfg. Co. v. Boyce, 292 F. 480, 481 (3d Cir. 1923).[7]

Consolidated Vultee Aircraft Corp. v. Maurice A. Garbell, Inc., 204 F.2d 946 (9th Cir. 1953), cert. denied, 346 U.S. 873, 74 S.Ct. 122, 98 L.Ed. 381 another shop right suit held (p. 949) in a striking antithesis that whereas the inventor *"devised* and *conceived* [the invention] prior to that employment," error subsisted in the Court's holding that the inventor-employee *"made,* developed and perfected his alleged invention when he devised and conceived it. * * * An invention is *not made,* developed or perfected *until reduced to practice."* [8]

■■ Section 184 may, accordingly, with reasonable assurance, be construed as marking for its application the point where and when an invention is reduced to practice as that which determines when the invention was made. Defendant may not by a special and restrictive reading of plaintiff's answers to interrogatories establish the locus in quo as the United States rather than Great Britain. Emphasis placed elsewhere upon the evidence in the fuller context of a plenary trial may well serve to demonstrate that the invention was genetically British, and the existence of such possi-

---

**7.** Pyrene Mfg. Co. admonishes that "[i]t is a trite saying that invention defies definition * * *. Invention is a concept; a thing evolved from the mind." (292 Fed. p. 481)

**8.** S. W. Farber, Inc. v. Texas Instruments, Inc., 211 F.Supp. 686 (D.Del. 1962) provides a useful annotation on the subject. It reads (p. 692) as follows:

"Despite Foster's conception, his invention was not complete until he had reduced it to practice. This is a settled principle of patent law. Hann v. Venetian Blind Corp., 111 F.2d 455, 458 (9 Cir. 1940); Consolidated Vultee Aircraft Corp. v. Maurice A. Garbell, Inc., 204 F. 2d 946, 949 (9 Cir. 1953), cert. den. 346 U.S. 873, 74 S.Ct. 122, 98 L.Ed. 381 (1953); Corona Cord Tire Co. v. Dovan Chem. Corp., 276 U.S. 358, 383, 48 S.Ct. 380, 72 L.Ed. 610 (1928). A machine is reduced to practice when it is assembled, adjusted and used. E. I. DuPont De Nemours & Co. v. American Cyanamid Co., 120 F.Supp. 697, 701 (D.D.C.1954); Corna Cord Tire Co. v. Dovan Chem. Corp., supra. To establish reduction to practice of an invention for a mechanical device, the device tested must include all of the elements of the claim in issue. Akers v. Papst, 113 F.2d 136, 139, 27 CCPA 1400 (1940); Greene v. Beidler, 58 F.2d 207, 208 (2 Cir. 1932). Compare Daniels v. Permutit Co., 137 F.2d 823 (3 Cir. 1943)."

bility bars the grant of the defendant's motion.[9]

### Order

It is accordingly, ordered that defendant's motion for summary judgment declaring the patent in suit issued to plaintiff invalid be denied.

---

9. Theoretically, summary judgment is available in patent cases, as in other categories of litigation. In practise, however, the situation is rare in which the patent challenged by one accused of infringement is simple enough for adequate judicial comprehension without benefit of expert testimony and the reception of evidence providing the requisite underpinning for the facts so as to entitle the moving party to prevail upon the papers alone. See note in 6 Moore's, Fed.Prac. (2d Ed.) ¶ 56.17[44], p. 2617, et seq. and cases cited, particularly the following: Bridgeport Brass Co. v. Bostwick Laboratories, 181 F.2d 315 (2d Cir. 1950); Hazeltine Research v. General Electric Co., 183 F.2d 3 (7th Cir. 1950); Cheiten v. Hancock-Gross, Inc., 234 F.Supp. 717 (E.D.Pa.1964); Chiplets, Inc. v. June Dairy Products Co., 89 F.Supp. 814 (D.N.J.1950). Cf. Webster Loom Co. v. Higgins, 105 U.S. 580, 586 (1882), 26 L.Ed. 1177; Technograph Printed Circuits v. Methode Elect. Inc., 356 F.2d 442, 488 (7th Cir. 1966), cert. denied, 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547; Sunbeam Corp. v. S. W. Farber, Inc., 243 F.Supp. 75 (S.D.N.Y.1965); Kollsman Instrument Corp. v. Astek Instrument Corp., 225 F.Supp. 534 (S.D.N.Y.1964).

Judge Holtzoff's sage observation in Aktiebolaget Vargos v. Clark, 8 F.R.D. 635 (D.C.C.1949) serves as an additional warning against too hasty judicial action in denying a litigant his full day in Court. "Interrogatories", he remarks, "are not to be used as a device or a stratagem to maneuver the adverse party into an unfavorable tactical position. To do so is to pervert a remedy designed to advance the disposition of controversies on their merits, into a weapon to revive what has been aptly denominated as 'the sporting theory of justice'—the very shortcoming of the old procedure that the new rules were designed to cure."